**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO. 3:10-CV-311-RJC-DCK**

| | | |
|---|---|---|
| **VENUS SPRINGS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| **ALLY FINANCIAL, INC., f/k/a GMAC** | ) | |
| **INC., AMY BOUQUE, KATHLEEN** | ) | |
| **PATTERSON, YEQUIANG (BILL) HE,** | ) | |
| **and CYNTHIA DAUTRICH,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**THIS MATTER IS BEFORE THE COURT** on "Plaintiff's Motion To Remand To State

Court ..." (Document No. 7); "Defendant Ally Financial Inc.'s Second Rule 12(B)(6) Motion For

Partial Dismissal Of Claims From Plaintiff's Amended Complaint" (Document No. 9); Defendant

Amy Bouque's Motion To Dismiss Plaintiff's Amended Complaint Under Rules 12(B)(2) And

12(B)(6)..." (Document No. 11); and "Defendant Cynthia Dautrich's Motion To Dismiss Plaintiff's

Amended Complaint Under Rules 12(B)(2) And 12(B)(6)..." (Document No. 13). These motions

have been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and are now

ripe for disposition.

Having carefully considered the arguments, the record, and the applicable authority, the

undersigned will respectfully recommend that *pro se* Plaintiff Venus Springs' ("Plaintiff") motion

to remand be <u>denied</u> as moot; Defendant Ally Financial Inc.'s ("Ally") second motion to dismiss

be granted; Defendant Amy Bouque's ("Bouque") motion to dismiss be granted; and Defendant

Cynthia Dautrich's ("Dautrich") motion to dismiss be granted.

## I. BACKGROUND

On June 8, 2010, Plaintiff filed a "Complaint" in the Superior Court of Mecklenburg County, North Carolina, naming Ally (formerly known as GMAC, Inc.), Bouque, Kathleen Patterson ("Patterson"), and Yequiang (Bill) He ("He") as defendants. (Document No. 1-1, p.4). The Complaint asserted claims arising under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.* and 42 U.S.C. § 1981, as well as a state law claim for wrongful termination. (Document No. 1-1, pp.15-19). Defendant Ally was served a copy of the Summons and Complaint on or about June 14, 2010. (Document No. 1, p.1). On July 12, 2010, Defendant Ally filed a timely "Notice Of Removal..." (Document No. 1) to this Court based on federal question jurisdiction. Also on July 12, 2010, Defendant Ally filed its first "...Motion For Partial Dismissal..." (Document No. 2).

On July 8, 2010, Plaintiff filed an "Amended Complaint" in the Superior Court of Mecklenburg County. (Document No. 8-1). The Amended Complaint, among other things, added Dautrich as a defendant and added a fourth cause of action for negligent infliction of emotional distress. Id. Defendant Ally contends that it was served a copy of the Amended Complaint on or about July 15, 2010, *after* it had filed its original Notice of Removal to this Court on July 12, 2010. (Document No. 8, pp.2-3).

The heart of Plaintiff's action is her alleged wrongful termination by Defendant Ally on July 10, 2009. (Document No. 8-1, pp.7-8). According to the Amended Complaint, Plaintiff began her employment with GMAC, Inc. in Charlotte, North Carolina, during October 2008 as a senior strategic sourcing manager for legal services. Id. at p.7. She was hired by GMAC, Inc. "to support the company's legal department by locating legal service vendors or law firms to represent Defendant's interests in assisting the company's legal department in its decisions to purchase legal services." Id. at p.9. Plaintiff contends that she was fired by Defendants because she filed an action

against her previous employer, the law firm Mayer Brown, LLP, alleging "inter alia, race based discrimination and unfair and deceptive trade practices." Id. at pp. 7-8. The Amended Complaint asserts that Defendant Ally had stated "grounds for termination for failure to disclose a conflict of interest during the interview process and for misrepresentation during the hiring process." Id. at p.14. Plaintiff, however, contends that Ally's grounds for termination "are a pretext for purposeful discrimination and retaliation for having filed a charge with the EEOC and a claim of race discrimination against one of Defendant Ally's legal vendors, Mayer Brown." Id.

The Amended Complaint alleges that Defendant Bouque was a "Director of Human Resources at Defendant Ally based in Detroit, Michigan" who "aided, abetted, incited, compelled, or coerced the commission of the Defendant Ally's unlawful discriminatory practice" and "participated in the decision to terminate Springs." (Document No. 8-1, pp.5-6). Plaintiff also contends that Bouque falsely defamed her and made false allegations, documentation, and misrepresentations. Id. at p.17. Regarding Defendant Dautrich, the Amended Complaint alleges that she was the "Chief Procurement Officer at Defendant Ally based in the Fort Washington, Pennsylvania office," that she "participated in the decision to terminate Springs," and "approved the discharge of Springs' employment." Id. at p.6.

A timely "Notice Of Removal Of Amended Complaint..." (Document No. 8) was filed on behalf of Defendants Ally, Bouque, and Dautrich on July 28, 2010. This second Notice Of Removal acknowledges that Bouque and Dautrich had been served with the Amended Complaint and denies that Patterson or He has been served. (Document No. 8, p.3). In conjunction with the second Notice of Removal, Defendants Ally, Bouque and Dautrich each filed motions to dismiss. (Document Nos. 9, 11, and 13).

Also on July 28, 2010, Plaintiff filed her "...Motion To Remand To State Court..." (Document No. 7). Plaintiff's Motion To Remand contends that the original Notice Of Removal (Document No. 1) was procedurally defective "since all defendants who had been served with the summons and complaint in the state court action did not join the removal." (Document No. 7, p.1). The pending motions are now ripe for disposition and will be analyzed in turn below.

## II. STANDARD OF REVIEW

A party invoking federal court jurisdiction has the burden of establishing that personal jurisdiction exists over the defendant. New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005); Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989).

> When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of evidence. . . . [W]hen, as here, the court addresses the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge. In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.

Combs, 886 F.2d at 676. (internal citations omitted). "Mere allegations of in personam jurisdiction are sufficient for a party to make a prima facie showing." Barclays Leasing, Inc. v. National Business Systems, Inc., 750 F.Supp. 184, 186 (W.D.N.C. 1990). The plaintiff, however, "may not rest on mere allegations where the defendant has countered those allegations with evidence that the requisite minimum contacts do not exist." IMO Industries, Inc. v. Seim s.r.l., No. 3:05-CV-420-GCM, 2006 WL 3780422 at *1 (W.D.N.C. Dec. 20, 2006). "Rather, in such a case the plaintiff must

come forward with affidavits or other evidence to counter that of the defendant . . . factual conflicts must be resolved in favor of the party asserting jurisdiction...." Id.

Questions of jurisdiction over a person must be answered by a two step analysis: (1) the court must determine whether the North Carolina long-arm statute confers personal jurisdiction; and (2) the court must determine whether the exercise of that statutory power will violate the due process clause of the U.S. Constitution. General Latex & Chem. Corp. v. Phoenix Med. Tech., 765 F.Supp. 1246, 1248-49 (W.D.N.C. May 31, 1991). The statutory inquiry merges with the constitutional inquiry, essentially becoming one. See ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir. 1997).

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1960 (2009)(quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949.

The Supreme Court also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(citations omitted).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. DISCUSSION

**A. Plaintiff's Motion To Remand (Document No. 7).**

It is undisputed that "Defendant Ally Financial Inc.'s Motion For Partial Dismissal Under Rule 12(B)(6)" (Document No. 2) was filed seeking the dismissal of the original Complaint filed in North Carolina state court on June 8, 2010, and served on Defendant Ally on or about June 14, 2010. Furthermore, it is beyond dispute that Plaintiff's Amended Complaint was filed on or about July 8, 2010, in North Carolina state court, and served on Defendant Ally on or about July 15, 2010. As such, Defendant Ally's original "Notice of Removal..." (Document No. 1) and first "Motion For Partial Dismissal" (Document No. 2) were timely filed in this Court on July 12, 2010, *before* Defendant Ally had received service of the Amended Complaint. Defendant Ally has since filed a "...Motion For Partial Dismissal..." (Document No. 9) of the Amended Complaint which will be discussed below. Based on the foregoing, the Court issued an Order on October 7, 2010, denying the first motion to dismiss as moot. (Document No. 22).

Likewise, the "...Motion To Remand..." (Document No. 7) should also be denied as moot. The timely "Notice Of Removal Of Defendant Ally, Inc." (Document No. 1) was filed regarding the original Complaint. Plaintiff's subsequent "...Motion To Remand..." (Document No. 7) is entirely directed at the alleged defects of the first "Notice Of Removal...." (Document No. 1). As with the

first motion to dismiss, the undersigned finds that Plaintiff's "...Motion To Remand..." has been mooted by Plaintiff's own Amended Complaint, as well as by Defendants' "Notice Of Removal Of Amended Complaint..." (Document No. 8). It appears that this second "Notice Of Removal..." (Document No. 8) cured the alleged defects of the first; moreover, Plaintiff has failed to file a timely objection or any other opposition to the second "Notice of Removal..."(Document No. 8).

It is well settled that a timely-filed amended pleading supersedes the original pleading, and that motions directed at superseded pleadings may be denied as moot. Young v. City of Mount Ranier, 238 F.3d 567, 573 (4th Cir. 2001)("The general rule .... is that an amended pleading supersedes the original pleading, rendering the original pleading of no effect"); Colin v. Marconi Commerce Systems Employees' Retirement Plan, 335 F.Supp.2d 590, 614 (M.D.N.C. 2004) ("Earlier motions made by Defendants were filed prior to and have been rendered moot by Plaintiffs' filing of the Second Amended Complaint"); Turner v. Kight, 192 F.Supp. 2d 391, 397 (D.Md. 2002) (denying as moot motions to dismiss original complaint on grounds that amended complaint superseded original complaint).

Plaintiff's "Amended Complaint" (Document No. 8-1) supersedes the original "Complaint" (Document No. 1-1), and the earlier motions to dismiss and remand have been rendered moot by the Amended Complaint and the "Notice of Removal Of Amended Complaint..." (Document No. 8). The undersigned will therefore respectfully recommend that the "...Motion To Remand..." (Document No. 7) be denied as moot.

**B. Defendants' Motions To Dismiss (Document Nos. 9, 11, and 13)**.

Next, the undersigned will examine Defendants' pending motions to dismiss (Document Nos. 9, 11, and 13) and Plaintiff's opposition to those motions (Document No. 17).

**1. Personal Jurisdiction Pursuant to Fed.R.Civ.P. 12(b)(2)**

Bouque and Dautrich (together "individual Defendants") each first argue that the action should be dismissed against them because there is (1) no basis for personal jurisdiction under North Carolina law, and (2) a lack of sufficient minimum contacts with North Carolina to permit a Constitutional exercise of personal jurisdiction. (Document Nos. 11 and 13). When a district court determines personal jurisdiction on the basis of briefs and the allegations in the complaint, without an evidentiary hearing, "the plaintiff bears the burden [of] making a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." Consulting Engineers, Inc. v. Geometric Limited, 561 F.3d 273, 278 (4th Cir. 2009) citing Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989); see also, Sweezy v. Specialized Bicycle Components, Inc.*,* 3:08-CV-268-GCM, 2009 WL 382719 at *1 (W.D.N.C. Feb. 12, 2009).

A federal court exercises personal jurisdiction over a defendant in the manner provided by state law. ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 622 (4th Cir. 1997); Fed.R.Civ.P. 4(k)(1)(A). The court must first consider whether the forum state's long-arm statute authorizes personal jurisdiction. Consulting Engineers, 561 F.3d at 277.

**a. Long-Arm Statute**

The North Carolina Long-Arm Statute authorizes the exercise of jurisdiction over a defendant in twelve circumstances. N.C. Gen. Stat. § 1-75.4(1)-(12). The individual Defendants point out that the Amended Complaint "does not identify which of the provisions Plaintiff contends are applicable." (Document No. 12, p.5; Document No. 14, p.5). Plaintiff's opposition to the motions to dismiss (Document No. 17) specifically argues that "personal jurisdiction is proper under North Carolina's long-arm statute" but also fails to identify the applicable provision of the statute in that section of her argument. (Document No. 17, pp.8-10). Later in her memorandum, Plaintiff

seems to assert, without expressly identifying the provision, that individual Defendants are subject to North Carolina's long-arm statute under N.C.Gen.Stat. 1-75.4(4)(a) because an injury in the state was claimed. (Document No. 17, p.12).

N.C.Gen.Stat. 1-75.4(4) provides in pertinent part:

> A court of this State having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to Rule 4(j), Rule 4(j1), or Rule 4(j3) of the Rules of Civil Procedure under any of the following circumstances:
> . . .
>
> (4) Local Injury; Foreign Act. --In any action for wrongful death occurring within this State or in any action claiming injury to person or property within this State arising out of an act or omission outside this State by the defendant, provided in addition that at or about the time of the injury either:
>
> a. Solicitation or services activities were carried on within this State by or on behalf of the defendant;
>
> b. Products, materials or thing processed, serviced or manufactured by the defendant were used or consumed, within this State in the ordinary course of trade; or
>
> c. Unsolicited bulk commercial electronic mail was sent into or within this State by the defendant . . . .

Plaintiff relies on Vishay Intertech., Inc. v. Delta Int'l Corp., 696 F.2d 1062, 1067-1068 (4th Cir. 1982), in arguing the applicability of the long-arm statute; however, Plaintiff does not describe how the "solicitation" requirement, or any other requirement of 1-75.4(4), is met under the facts of this case. See Vishay, 696 F.2d 1068 (citing Munchak Corp. v. Riko Enterprises, Inc., 368 F.Supp. 1366 (M.D.N.C.1973); N.C.Gen.Stat. 1-75.4(4)(a)). The statute defines "solicitation" as "a request or appeal of any kind, direct or indirect, by oral, written, visual, electronic, or other communication, whether or not the communication originates from outside the State." N.C.Gen.Stat. 1-75.2(5)

> To exercise personal jurisdiction over a foreign [defendant], the plaintiff must establish: 1) an action claiming injury to a North Carolina person or property; 2) that the alleged injury arose from activities by the defendant outside of North Carolina; and 3) that the defendant was engaging in solicitation or services within North Carolina at or about the time of the injury.

Wallace v. Smith, 161 N.C.App. 742 (2003)(quoting Fran's Pecans, Inc., 134 N.C.App. 110, 113 (1999)); see also, Med-Therapy Rehabilitation Services, Inc. v. Diversicare Corp. of America, 768 F.Supp. 513, 518 (W.D.N.C. 1991); Dixie Yarns, Inc. v. Plantation Knits, Inc., 1994 WL 910955 at *3 (W.D.N.C. July 12, 1994).

> The facts at bar present the question of whether defendant was engaged in "solicitation ... within North Carolina at or about the time of the injury." Id. This Court has held that two or three visits to North Carolina in furtherance of a contract, along with numerous phone calls regarding that contract, is sufficient to satisfy the third-prong of the long-arm statute test.

Id. (citing Carson v. Brodin, 160 N.C.App. 366, 370, (2003).

Here, even liberally construed, Plaintiff's Amended Complaint and opposition to the motions to dismiss offer, at best, incomplete support for an argument that the long-arm statute applies. It is not enough to simply conclude that out of state Defendants caused an injury within this state.

> The court must infer the existence of jurisdiction only on the basis of what is pled, and the Complaint does not allege any facts from which the court can infer that [Defendant] meets the conditions of § 1-75.4(4). Specifically, the Complaint does not allege any solicitation or services activities in North Carolina by [Defendant], that any products, materials or things processed, serviced or manufactured by [Defendant] were used or consumed in North Carolina, nor that unsolicited bulk commercial mail was sent into this State. Therefore, there is no personal jurisdiction under the state long-arm statute.

Caraustar Custom Packaging Group Inc. v. Stockart.com, LLC, 3:05-CV-0377, 2006 WL 2224291 at *3 (W.D.N.C. 2006).

As in Caraustar, the Amended Complaint in this case does not allege any solicitation or service activities, nor has Plaintiff since offered any argument or support for such activities. Plaintiff has alleged that Bouque is or was a Human Resources employee, based in Michigan, who was joined into a meeting between Lee Blasingame and Plaintiff, by teleconference. (Document No. 8-1, pp. 5, 10). Plaintiff described the meeting as "regarding a potential conflict of interest." (Document No. 8-1, pp. 10-11). In addition to participating in a meeting, Plaintiff alleges that Bouque "aided abetted, incited, compelled or coerced the commission of Defendant Ally's unlawful discriminatory employment practice . . . participated in the decision to terminate Springs" and "intentionally and falsely characterized Springs' response" to a proposed mutual release agreement. (Document No. 8-1, pp. 5-6, 14). Plaintiff's only allegation against Dautrich, a Chief Procurement Officer based in Pennsylvania, is that she "participated in the decision to terminate Springs" and "approved the discharge of Springs' employment." (Document No. 8-1, p.6).

These allegations do not appear to be consistent with any of the provisions of N.C.Gen.Stat. 1-75.4 granting a North Carolina court jurisdiction, nor does Plaintiff contend that the individual Defendants' allegedly discriminatory and/or negligent behavior took place in North Carolina. The undersigned thus concludes that Plaintiff has failed at the first step of the jurisdictional analysis to establish that North Carolina's long-arm statute confers *in personam* jurisdiction over these individual Defendants. Even if the Court found jurisdiction under North Carolina's long-arm statute, the undersigned is not convinced that Plaintiff has met her burden of showing sufficient minimum contacts necessary under the due process clause of the United States Constitution to exercise jurisdiction over these individual Defendants.

### b.  Due Process

If personal jurisdiction is authorized under the long-arm statute, a court must next consider whether there are sufficient contacts with the forum state to meet the requirements of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.  There are two categories of personal jurisdiction, general and specific.  General jurisdiction requires "substantial" or "continuous and systematic" contacts or activities in the forum state.  Specific jurisdiction exists when a court exercises personal jurisdiction over a defendant in a suit *arising out of* or *related to* the defendant's contacts with the forum.  Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984).

### (1)  General Jurisdiction

"The Fourth Circuit has described the threshold level of minimum contacts required for general jurisdiction as 'significantly higher than for specific jurisdiction' and as 'very substantial, indeed.'"  Sweezy, 2009 WL 382719 at *2 quoting EASB Group, 126 F.3d at 623-24.  In the instant case, Plaintiff has not alleged general jurisdiction and the facts as alleged certainly do not support a finding that the individual Defendants' contacts with this forum were substantial, or continuous and systematic.  To the contrary, by their motions and affidavits, Defendants Bouque and Dautrich both assert that they: (1) are not, and have never been residents of North Carolina; (2) do not have business offices in North Carolina; (3) own no real estate or personal property in North Carolina; (4) have not sold property in North Carolina; (5) live in Michigan and Pennsylvania, respectively; (6) do not sell goods or services in North Carolina; (7) are not licensed to do business in North Carolina; (8) do not own or have access to personal or corporate bank accounts in North Carolina; (9) are not owners of corporations in North Carolina; (10) are not corporate directors or officers of companies doing business in North Carolina; (11) did not directly supervise Plaintiff; (12) did not

terminate or inform Plaintiff of her termination; (13) did not interact face-to-face with Plaintiff in North Carolina; and (14) have never sued, nor been sued in North Carolina. (Document Nos. 12, pp. 5-6; Document No. 12-1, pp.1-3; Document No. 14, pp. 5-6; Document No.14-1, pp.1-3).

For the most part, the Bouque and Dautrich affidavits are uncontroverted; however, Plaintiff does challenge the individual Defendants' sworn statements that they are not corporate directors or officers of a company doing business in North Carolina. (Document No. 17, p.7). To the extent there is a factual conflict, the Court, as it must, will construe the factual allegations in favor of the Plaintiff at this stage and assume for purposes of this motion that the individual Defendants were officers of Defendant Ally during the relevant time period. Combs v. Bakker, 886 F.2d at 676. Even accepting Plaintiff's claim that these Defendants were officers, the undersigned does not find that their contacts with the forum were sufficient to establish personal jurisdiction. This Court has previously held that

> "Personal jurisdiction over an individual officer, director, or employee of a corporation does not automatically follow from personal jurisdiction over the corporation.... Personal jurisdiction must be based on an individual's personal contacts with or purposeful availment of the forum state." Specifically, the Fourth Circuit has held that personal jurisdiction cannot be established based solely upon an individual's telephone calls or letters sent to the forum state. "To conclude that such activity establishes presence in a state would upset generally held expectations ... and redefine the nature of state sovereignty." . . . The record only reflects the individual Defendants' scant actions made on behalf of their corporate employer, and the undersigned cannot find an independent basis to constitutionally exercise personal jurisdiction over them.

Smith v. Dade Behring Holdings, Inc., 1:05-CV-86-LHT-DLH, 2007 WL 152119 at *3 (W.D.N.C. Jan. 16, 2007) (internal citations omitted).

The individual Defendants' limited contacts with North Carolina do not support a finding of general jurisdiction.

(2) <u>Specific Jurisdiction</u>

Specific jurisdiction is based on the concept that a party who enjoys the privilege of conducting business in the forum state should bear the reciprocal obligation of answering to legal proceedings in that forum state. <u>International Shoe v. Washington</u>, 326 U.S. 310, 319 (1945). However, "to justify the exercise of personal jurisdiction over a non-resident defendant, the defendant's contacts with the forum state must have been so substantial that 'they amount to a surrogate presence and thus render the sovereignty just.'" Consulting Engineers Corp. v. Geometric Ltd., 561 F.3d at 273, 277-78 (4th Cir. 2009)(quoting ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir. 1997). It is essential that a plaintiff show that a defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985). Each defendant's contacts with a forum state must be assessed individually. <u>Calder v. Jones</u>, 465 U.S. 783, 790 (1984).

The Fourth Circuit has "synthesized the due process requirement for asserting specific personal jurisdiction in a three-part test . . . (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'" Consulting Engineers, 561 F.3d at 278 (quoting ALS Scan, Inc v. Digital Service Consultants, Inc., 293 F.3d at 712).

As addressed above, to the extent Plaintiff suggests that Bouque and Dautrich are subject to personal jurisdiction in North Carolina because they are officers of the Corporate Defendant, it is well-settled that a defendant must herself have substantial contacts with the forum state in order to be subject to the personal jurisdiction of that state. See, e.g., Burger King Corp. v. Rudzewicz, 471

U.S. 462, 475 (1985)(holding that personal jurisdiction is proper only "where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum state");  see also, Smith, 2007 WL 152119 at *3 ("Plaintiff would need to show Defendants have independently and purposefully availed themselves to this forum to create the minimum contacts necessary....").

Plaintiff contends that

> Defendants place paramount importance on the dearth of its contact with North Carolina. Yet in Vishtay Intertech the Court found jurisdiction when at most, Delta  wrote three letters and initiated five telephone calls to the plaintiff.

(Document No. 17, p.13).  The undersigned also finds the lack of contacts with the forum important and notes that Plaintiff's allegations of contacts related to the claims of this lawsuit appear to be significantly less than those in Vishtay.  In the instant case, Plaintiff alleges that Defendant Bouque was joined into one teleconference, and that a letter dated January 25, 2010 from Defendant Ally "disclosed that Defendant Dautrich approved the discharge."  (Document No. 8-1, pp. 6, 10). Plaintiff does not allege that either of these individual Defendants initiated a phone call, a letter, or any other contact with North Carolina – arising out of or related to Plaintiff's claims.  Plaintiff generally contends that the individual Defendants made a few trips to Charlotte, North Carolina, and sent her some emails during her employment with Ally, but she does not allege that even these minimal contacts support, or were related to, the claims in this lawsuit.  (Document No. 17-1).

The undersigned is not persuaded that the individual Defendants' limited contacts with North Carolina, purportedly all in the context of their employment with Defendant Ally, are so substantial as to amount to a surrogate presence in this forum and to support specific jurisdiction.

> An individual who has chosen simply to transact business in a state through a valid and viable corporation has not necessarily

"purposefully avail[ed]" himself of "the privilege of conducting activities within ... [that] State" in his individual capacity. Hanson v. Denckla, 357 U.S. 235, 253 (1958). Nor can it be said that he would "reasonably anticipate being haled into court" in the state in his individual capacity by virtue of the corporation's activities there. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); see also Calder v. Jones, 465 U.S. 783, 790 (1984) (employees' contacts with the state "are not to be judged according to their employer's activities there"); Shaffer v. Heitner, 433 U.S. 186, 213-16 (1977) (individuals' status as directors and officers of a corporation insufficient to sustain jurisdiction over them in the state of incorporation absent a statute to the contrary). No principle is more firmly embedded in corporation law than that a corporation exists separately and independently from its principals, and business people are entitled to rely upon the maintenance of that principle in structuring and managing their affairs.

Smith, 2007 WL 152119 at *9 (quoting Birrane v. Master Collectors, Inc., 738 F.Supp. 167, 169-70 (D.Md. 1990)).

Construing all relevant pleadings in the light most favorable to Plaintiff, assuming credibility, and drawing the most favorable inferences for the existence of jurisdiction, the undersigned does not find that application of the Fourth Circuit's three-part test for specific jurisdiction supports Plaintiff's position. See Consulting Engineers, 561 F.3d at 278 (quoting ALS Scan, Inc v. Digital Service Consultants, Inc., 293 F.3d at 712). Plaintiff has not met her burden of showing by a preponderance of the evidence that these individual Defendants purposefully availed themselves of the privilege of conducting activities in the State, or that the exercise of personal jurisdiction would be constitutionally reasonable. The alleged contacts simply appear to be too attenuated.

"[T]he Fourth Circuit has made it clear that due process requires that a defendant's contacts with the forum state be tantamount to physical presence there." Ritz Camera Centers, Inc. v. Wentling Camera Shops, Inc., et al., 982 F.Supp. 350, 353 (D.Md. 1997).

> [T]elephonic (voice and facsimile) exchanges and mail correspondence from without the state. . . .do not provide a basis for the exercise of personal jurisdiction. See Stover, 84 F.3d at 137 ("the use of a telephone ... serves as an *alternative* to presence"); Cape, 932 F.Supp. at 128 ("Generally speaking, correspondence and phone calls from out-of-state defendants to in-state plaintiffs are insufficient as a matter of law to establish the minimum contacts that satisfy due process.")

Id. at 354.

The undersigned cannot find that either Defendant Bouque's, or Defendant Dautrich's, limited contacts described by Plaintiff are tantamount to a physical presence in North Carolina. Based on the foregoing, the undersigned will respectfully recommend that the individual Defendants' motions to dismiss (Document Nos. 11 and 13) be granted.

### 2. Claims Upon Which Relief May Be Granted Pursuant To Fed.R.Civ.P. 12(b)(6)

Although the individual Defendants plead in the alternative that the Amended Complaint against them should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6), in light of the undersigned's analysis above, the discussion of the application of 12(b)(6) will focus on the arguments regarding Defendant Ally. Defendant Ally's motion to dismiss seeks, in most pertinent part, the dismissal of Plaintiff's claim of negligent infliction of emotional distress. (Document No. 9). To the extent Defendant Ally's motion to dismiss also addresses claims against the individual Defendants, the undersigned finds it unnecessary to discuss those arguments.

### a. First Cause of Action - Title VII of the Civil Rights Act of 1964

Defendant Ally has not moved for dismissal of this claim against itself. (Document Nos. 9-10). Plaintiff has abandoned this cause of action as to the individual Defendants. (Document No. 17, pp. 17-18).

### b. Second Cause of Action - 42 U.S.C. § 1981

Defendant Ally has not moved for dismissal of this claim against itself. (Document Nos. 9-10). The undersigned will decline to address the individual Defendants' arguments against this claim in view of the finding that the Plaintiff has not sufficiently established personal jurisdiction regarding the individual Defendants.

### c. Third Cause of Action - Wrongful Termination

Defendant Ally has not moved for dismissal of this claim against itself. (Document Nos. 9-10). Plaintiff has abandoned this cause of action as to the individual Defendants. (Document No. 17, pp. 17-18).

### d. Fourth Cause of Action - Negligent Infliction of Emotional Distress

Finally, the relevant remaining claim potentially subject to a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is Plaintiff's cause of action for negligent infliction of emotional distress ("NIED"). (Document No. 8-1, p.19). The Amended Complaint alleges that

> Each of the Defendant's role and participation in the decision to terminate Springs were negligent acts. It was reasonably foreseeable that these acts would cause Plaintiff extreme emotional distress. As a proximate and foreseeable result of the actions of each of the Defendants, Plaintiff has suffered severe emotional distress, physical illness, mental anguish, humiliation and anxiety.

Document No. 8-1, p.19).

Defendant Ally argues that the entire foundation of Plaintiff's other causes of action is the alleged *intentional* conduct of all Defendants and that this cause of action should be dismissed for failure to present a *prima facie* case of negligence.

> "To make out a claim for negligent infliction of emotional distress, a plaintiff must ... [allege] that the defendant was negligent, that it was foreseeable to the defendant that his negligence would cause the plaintiff severe emotional distress, and that the conduct, in fact,

> caused severe emotional distress." <u>Fox-Kirk v. Hannon</u>, 142
> N.C.App. 267, 273, <u>disc. review denied and dismissed</u>, 353 N.C. 725
> (2001).

<u>Holleman v. Aiken</u>, 668 S.E.2d 579, 591 (N.C.App. 2008); <u>see also</u>, <u>Franklin v. Yancey County</u>, 1:09-CV-199-MR-DCK, 2010 WL 317804 at *7 (W.D.N.C. Jan. 19, 2009). "Plaintiff has not alleged any negligent conduct in his Complaint. 'Negligence is the breach of a legal duty owed by defendant that proximately causes injury to plaintiff.'" <u>Franklin</u>, 2010 WL 317804 at *7 (quoting <u>Guthrie v. Conroy</u>, 152 N.C.App. 15, 25, 567 S.E.2d 403, 410 (2002)).

Although the Amended Complaint alleges a *prima facie* case, Defendant Ally argues that "Plaintiff's nonspecific, 'naked assertion' of negligent infliction of emotional distress is insufficient as a matter of law." (Document No. 10, p.8)(citing <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009). The undersigned agrees with Defendant Ally, finding that all of Plaintiff's allegations of fact involve intentional acts of discrimination. Therefore, although Plaintiff has asserted the basis for a NIED claim, it is not plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S.Ct. at 1949.

Plaintiff contends that "Defendant provides no precedential case law in concluding that intentional conduct does not support negligent infliction of emotional distress." (Document No. 17, p.22). However, as Defendant Ally's memorandum in support of its motion notes, this Court has addressed this issue in a previous claim by *this Plaintiff.* (Document No. 10, p.9)(citing <u>Springs v. Mayer Brown</u>, 3:09cv352, 2009 WL 3461231 (W.D.N.C. Oct. 20, 2009)). In <u>Mayer Brown</u> this Court opined

> The law is clear, however, that inherently intentional conduct, such
> as discrimination, cannot support a claim for negligent infliction of
> emotional distress. <u>Mitchell v. Lvdall Inc.</u>, 16 F.3d 410, 1994 WL

> 38703 (4th Cir. 1994) (allegation of intentional employment discrimination will not support negligence claim); <u>Thomas v. Northern Telecom.</u>, 157 F.Supp.2d 627 (M.D.N.C. 2000) (holding that an employee's allegations of discriminatory conduct in the workplace were insufficient to state a claim for negligent infliction of emotional distress); <u>Barbier v. Durham County Bd. of Education</u>, 225 F.Supp.2d 617, 631 (M.D.N.C.2002) (granting judgment on the pleadings and holding under North Carolina law that, when complaint alleges acts of intentional discrimination, same acts cannot support claim for negligent infliction of emotional distress).

<u>Springs v. Mayer Brown</u>, 2009 WL 3461231 at *7. In that action, Plaintiff later filed an Amended Complaint omitting her claim for negligent infliction of emotional distress and thus waiving her NIED claim. <u>Springs v. Mayer Brown</u>, 3:09cv352, 2010 WL 2347946 at *1 (W.D.N.C. June 9, 2010).

The undersigned is persuaded by Defendant Ally's arguments, as well as the case law cited, and will respectfully recommend that Plaintiff's cause of action for NIED be dismissed.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that:

(1) "Plaintiff's Motion To Remand To State Court ..." (Document No. 7) be **DENIED AS MOOT**;

(2) "Defendant Ally Financial Inc.'s Second Rule 12(B)(6) Motion For Partial Dismissal Of Claims From Plaintiff's Amended Complaint" (Document No. 9) be **GRANTED**;

(3) Defendant Amy Bouque's Motion To Dismiss Plaintiff's Amended Complaint Under Rules 12(B)(2) And 12(B)(6)..." (Document No. 11) be **GRANTED**; and,

(4) "Defendant Cynthia Dautrich's Motion To Dismiss Plaintiff's Amended Complaint Under Rules 12(B)(2) And 12(B)(6)..." (Document No. 13) be **GRANTED**.

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within fourteen (14) days of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and the Honorable Robert J. Conrad, Jr.

**IT IS SO RECOMMENDED**.

Signed: October 13, 2010

David C. Keesler
United States Magistrate Judge