**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO. 3:10-CV-311-RJC-DCK**

| | |
|---|---|
| VENUS SPRINGS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| ALLY FINANCIAL, INC., | ) |
| f/k/a GMAC INC., | ) |
| | ) |
| Defendant. | ) |

**THIS MATTER IS BEFORE THE COURT** on "Defendant Ally Financial Inc.'s Motion For Protective Order" (Document No. 44) filed August 16, 2011. This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and is ripe for disposition. Having carefully considered the motion, the record, and applicable authority, the undersigned will grant the motion.

## BACKGROUND

The basic factual and procedural background of this case was set forth in the undersigned's "Memorandum And Recommendation" (Document No. 23) on October 14, 2010, and was adopted without objection by the Court's "Order" (Document No. 31) ruling on motions to dismiss, and for remand, on November 19, 2010. The background of this case is relevant to the pending motion and warrants brief review.

On June 8, 2010, Plaintiff filed a "Complaint" in the Superior Court of Mecklenburg County, North Carolina, naming Ally Financial Inc. ("Ally" or "Defendant"), Amy Bouque ("Bouque"), Kathleen Patterson ("Patterson"), and Yequiang (Bill) He ("He") as defendants. (Document No. 1-1, p.4). The Complaint asserted claims arising under Title VII of the Civil Rights Act, 42 U.S.C. §

2000e, *et seq*. and 42 U.S.C. § 1981, as well as a state law claim for wrongful termination. (Document No. 1-1, pp.15-19). Defendant Ally was served a copy of the Summons and Complaint on or about June 14, 2010. (Document No. 1, p.1). On July 12, 2010, Defendant Ally filed a timely "Notice Of Removal..." (Document No. 1) to this Court based on federal question jurisdiction. Also on July 12, 2010, Defendant Ally filed its first "...Motion For Partial Dismissal..." (Document No. 2).

On July 8, 2010, Plaintiff filed an "Amended Complaint" in the Superior Court of Mecklenburg County. (Document No. 8-1). The Amended Complaint, among other things, added Cynthia Dautrich ("Dautrich") as a defendant and added a fourth cause of action for negligent infliction of emotional distress. Id. Defendant Ally contends that it was served a copy of the Amended Complaint on or about July 15, 2010, *after* it had filed its original Notice of Removal to this Court on July 12, 2010. (Document No. 8, pp.2-3).

The heart of Plaintiff's action is her alleged wrongful termination by Defendant Ally on July 10, 2009. (Document No. 8-1, pp.7-8). According to the Amended Complaint, Plaintiff began her employment with GMAC, Inc. in Charlotte, North Carolina, during October 2008 as a senior strategic sourcing manager for legal services. Id. at p.7. She was hired by GMAC, Inc. "to support the company's legal department by locating legal service vendors or law firms to represent Defendant's interests in assisting the company's legal department in its decisions to purchase legal services." Id. at p.9. Plaintiff contends that she was fired by Defendants because she filed an action against her previous employer, the law firm Mayer Brown, LLP, alleging "inter alia, race based discrimination and unfair and deceptive trade practices." Id. at pp. 7-8. The Amended Complaint asserts that Defendant Ally had stated "grounds for termination for failure to disclose a conflict of interest during the interview process and for misrepresentation during the hiring process." Id. at

2

p.14. Plaintiff, however, contends that Ally's grounds for termination "are a pretext for purposeful discrimination and retaliation for having filed a charge with the EEOC and a claim of race discrimination against one of Defendant Ally's legal vendors, Mayer Brown." Id.

A timely "Notice Of Removal Of Amended Complaint..." (Document No. 8) was filed on behalf of Defendants Ally, Bouque, and Dautrich on July 28, 2010. This second Notice Of Removal acknowledges that Bouque and Dautrich had been served with the Amended Complaint and denies that Patterson or He have been served. (Document No. 8, p.3). In conjunction with the second Notice of Removal, Defendants Ally, Bouque and Dautrich each filed motions to dismiss. (Document Nos. 9, 11, and 13).

Also on July 28, 2010, Plaintiff filed her "...Motion To Remand To State Court..." (Document No. 7). Plaintiff's Motion To Remand contends that the original Notice Of Removal (Document No. 1) was procedurally defective "since all defendants who had been served with the summons and complaint in the state court action did not join the removal." (Document No. 7, p.1).

The aforementioned Court's "Order" (Document No. 31) affirmed the "Memorandum And Recommendation" (Document No. 23). Specifically, the Order denied as moot Plaintiff's motion to remand; granted Defendant Ally's motion to dismiss Plaintiff's claim for negligent infliction of emotional distress; granted Defendant Bouque's motion to dismiss; and granted Defendant Dautrich's motion to dismiss. (Document No. 31, p.5). On December 28, 2010, the Court also dismissed Plaintiff's claims against Defendant He and Defendant Patterson. (Document No. 35).

Following the remaining parties' submission of a "Certification And Report Of F.R.C.P. 26(F) Conference And Discovery Plan" (Document No. 36) on January 17, 2011, the Court promptly issued a "Pretrial Order And Case Management Plan" (Document No. 37). Consistent with the parties' uncontested proposal, the deadline for the completion of all discovery was set for July 31,

2011. (Document No. 36, p.1; Document No. 37, pp.1-3). The "Pretrial Order..." provided in pertinent part that:

> All discovery shall be complete no later than July 31, 2011. . . . Counsel are directed to initiate discovery requests and notice or subpoena depositions sufficiently in advance of the discovery completion deadline so as to comply with this Order. Discovery requests that seek responses or schedule depositions after the discovery completion deadline are not enforceable except by order of the Court for good cause shown. The parties may consent to extensions of the discovery completion deadline so long as any such extension expires not later than ten (10) days prior to scheduled trial time.

(Document No. 37, pp.2-3).

It appears that there was little, if any, activity in this case from January 25, 2011, until on or about July 12, 2011, almost six (6) months later, when Plaintiff served written interrogatories on Defendant. (Document No. 38, p.1). Plaintiff's discovery requests were thus filed less than twenty (20) days before the deadline for the completion of all discovery. Plaintiff did not file a request to extend the discovery deadline prior to, or contemporaneously with, her discovery requests.

On July 20, 2011, Plaintiff for the first time sought an extension of the discovery deadline. (Document No. 38). Notably, Plaintiff's request was framed as one to allow Defendant Ally time to respond to Plaintiff's interrogatories, but was not consented to by Ally. Id. Defendant Ally did consent to an extension of time to complete already scheduled depositions. Id. Based on the foregoing, the undersigned did not find good cause to extend the time for written discovery in this case, and pursuant to the "Pretrial Order..." denied that portion of Plaintiff's motion. (Document No. 39). Noting the parties' consent, the undersigned allowed the parties through August 30, 2011, to complete currently scheduled depositions. (Document No. 39). "Plaintiff's Objections To The

Magistrate Judge's Discovery Order Of July 20, 2011" (Document No. 41) was filed August 8, 2011, and will be considered by the presiding district judge in due course.

On or about August 4, 2011, Plaintiff served her "...Amended Notice Of Rule 30(b)(6) Deposition" (Document No. 45-3) to be held on August 22, 2011, in Charlotte North Carolina. Plaintiff's "...Amended Notice Of Rule 30(b)(6) Deposition" includes approximately twenty (20) categories of documents it contends should be produced at the proposed 30(b)(6) deposition(s). (Document No. 45-3, pp.4-6). "Defendant's Objections To Plaintiff's Amended Notice Of Rule 30(b)(6) Deposition" was served on Plaintiff on or about August 8, 2011. (Document No. 45-5).

"Defendant Ally Financial, Inc.'s Motion For Protective Order" was filed and referred to the undersigned on August 16, 2011. This pending motion is now ripe for disposition.

**DISCUSSION**

Defendant Ally now seeks a Protective Order pursuant to Fed.R.Civ.P. 26 that would quash Plaintiff's amended 30(b)(6) notice of deposition requiring Defendant's corporate representatives to appear in Charlotte, North Carolina for depositions. (Document No. 44, p.1). Defendant further requests that the Court order that Defendant "need not be compelled to respond to the ancillary document request attached to the notice." Id.

**A. Location of Rule 30(b)(6) Depositions**

Defendant contends that the wide-ranging topics listed in Plaintiff's "...Amended Notice..." require the designation of three (3) corporate representatives to address the issues, including a corporate IT representative and a records retention representative. (Document No. 45, pp.5-6). Defendant argues that depositions of its corporate representatives in Charlotte is improper and burdensome because: (1) Defendant's principal place of business is Detroit, Michigan; (2) the corporate representatives reside and work in Detroit; and (3) Plaintiff cannot overcome the

5

presumption that 30(b)(6) depositions should take place in Detroit.[1] (Document No. 45, pp.5-6). In addition, Defendant argues the requested document production is untimely. Id.

In support of its argument, Defendant contends that numerous federal courts, including this Court, "have held that the presumption is that a deposition of a corporate representative should ordinarily be taken at the corporation's principal place of business, especially where the corporation is the defendant." (Document No. 45, p.6) (citing Belk v. Meyer, 3:07-CV-168-DCK, 2009 WL 703704 at *5 (W.D.N.C. Mar. 16, 2009); Turner v. Prudential Ins. Co. Of America, 119 F.R.D. 381, 383 (M.D.N.C. 1988); McDougal-Wilson v. Goodyear Tire & Rubber Co., 232 F.R.D. 246, 249 (E.D.N.C. 2005); and Salter v. Upjohn Co. Of America, 595 F.2d 649, 651 (5th Cir. 1979)).

The undersigned notes that in its previous analysis of this issue the Court opined that

> With respect to location, it is well-settled that the "deposition of a corporation through its agents or officers should normally be taken at the principal place of business of the corporation." Turner v. Prudential Ins. Co. of America, 119 F.R.D. 381, 383 (M.D.N.C.1988); 8 C. Wright & A. Miller, Federal Practice and Procedure, § 2112 at 409-10 (1970). "It will be presumed that the defendant will be examined at his residence or place of business or employment." 4 Moore's Federal Practice Sec. 26.70[1-3], at 26-514 (collecting cases). As the federal court aptly pointed out in Farquhar v. Shelden, 116 F.R.D. 70 (E.D.Mich. 1987):
>
>> "[I]n federal litigation, in the absence of special circumstances, a party seeking discovery must go where the desired witnesses are normally located. Salter v. Upjohn Co., 593 F.2d 649, 671 (5th Cir. 1979); Dunn v. Standard Fire Insurance Co., 92 F.R.D. 31 (E.D.Tenn. 1981); General Leasing Co. v. Lawrence Photo-Graphic Supply, 84 F.R.D. 130 (W.D.Mo. 1979). Underlying this rule appears to be

---

[1] Defendant has filed a "...Supplemental Memorandum..." informing the Court that one of its three designated corporate representatives has a residence in Charlotte, and works part of each month here. Defendant will produce this corporate representative at a date to be agreed upon, in Charlotte. (Document No. 47).

6

> the concept that it is the plaintiffs who bring the lawsuit and who exercise the first choice as to the forum. The defendants, on the other hand, are not before the court by choice. Thus, courts have held that plaintiffs normally cannot complain if they are required to take discovery at great distances from the forum. See Work v. Bier, 107 F.R.D. 789, 792 (D.C. 1985)."

Belk, 2009 WL 703704 at *5.

Plaintiff's "... Memorandum Of Law In Opposition..." acknowledges that Fed.R.Civ.P. 26(c)(1) grants the Court authority to issue a protective order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense, and that "a federal court has broad discretion to determine the appropriate location for a deposition." (Document No. 51, pp.1-3). Plaintiff asserts four arguments opposing the motion for a protective order. (Document No. 51, pp.3-10).

First, Plaintiff contends that Defendant has failed to identify "any realistic hardship or burden that would result from the Rule 30(b)(6) deposition taking place in Charlotte." (Document No. 51, p.3). Plaintiff goes on to essentially argue that the burden on Plaintiff traveling to Detroit outweighs the burden on Defendant's representatives traveling tor Charlotte. (Document No. 51, pp.3-4). Plaintiff does not cite any authority supporting her argument that a weighing of the burdens is the appropriate analysis here. Even if Plaintiff's analysis is correct, it is far from clear that there is greater burden and expense involved in Plaintiff going to Detroit than there is for Defendant's multiple representatives and counsel to travel to Charlotte.

Next, Plaintiff contends that a Rule 30(b)(6) deposition does not have to occur at a party's principal place of business. (Document No. 51, pp.4-8). In support of this argument Plaintiff relies on two cases. Id.

Plaintiff asserts that Rosenruist-Gestao E Servicos LDA v. Virgin Enterprises Ltd., 511 F.3d 437 (4th Cir. 2007) is notable because the Fourth Circuit did not mention a general presumption that a 30(b)(6) deposition take place at a corporate party's principal place of business. (Document No. 51, p.6). After review of the Rosenruist case, the undersigned agrees with Defendant that this case is not notable because the location of the deposition of a corporate party at its principal place of business was not an issue in Rosenruist. (Document No. 53, p.2). As noted by Defendant, the issue in Rosenruist "simply involves the extent of the district court's subpoena power under [35 U.S.C.A.] § 24 to ensure that parties are able to use the existing PTO [Patent Trade Office] *inter partes* procedures." Rosenruist, 511 F.3d at 448. The undersigned does not find Rosenruist sufficiently addresses the issues currently before the Court to provide persuasive guidance.

Plaintiff also designates The Scooter Store Inc. v. SpinLife.com, LLC, 2:10-cv-18 (S.D. Ohio, May 25, 2011) as instructive on the issues before the Court. (Document No. 51, p.6). Plaintiff contends that the Scooter Store decision involved a similar dispute about the location of a deposition and that in that case the Ohio court determined that "factors of convenience and litigation efficiency overcame any preference for the deposition to take place" at the deponent's principal place of business. (Document No. 51, pp.6-7). Plaintiff argues that Scooter Store is more analogous to the instant case than Belk.

The undersigned does not find that the unpublished Scooter Store decision provides sufficient authority to overcome the presumption recognized by this Court in Belk. Nevertheless, the undersigned has considered the factors identified in Scooter Store: cost, convenience, and litigation efficiency; and remains unconvinced that these factors clearly favor requiring Defendant's Rule 30(b)(6) depositions to take place in Charlotte. As Scooter Store recognized, "[g]enerally, a plaintiff must 'bear any reasonable burdens of inconvenience that the action represents.'" Scooter

8

Store, (Document No. 51-9, p.4). Moreover, the undersigned is not persuaded that cost or litigation efficiency favor requiring Defendant's representatives and counsel to travel to Charlotte for 30(b)(6) depositions. The undersigned observes that some of Plaintiff's other depositions either have, or will, occur remotely from Detroit by telephone or video conference, and that Defendant has agreed to the same arrangements for the 30(b)(6) depositions. (Document No. 45, p.3; Document No. 45-4). In addition, as noted above, Defendant has agreed that one of its three corporate representatives will be deposed in Charlotte.

In Plaintiff's next argument opposing the instant motion, she asserts that Defendant Ally's principal place of business is not in Michigan. (Document No. 51, p.8). While Plaintiff provides some interesting statistics based on Defendant Ally's income and receivables, if the Court relied on that information to establish the principal place of business it would point to California as Defendant's principal place of business. Id. Plaintiff, however, argues that Defendant's principal place of business "has to be either New York or Charlotte" based on the number of top executives that reside in either of those states. Id.

The undersigned finds Plaintiff's argument regarding Defendant's principal place of business inconclusive and unsupported by any legal authority. There seems to be no dispute that Charlotte is among several "key locations" worldwide for Defendant, and that some "top" executives live in Charlotte, but even if those are relevant criteria for establishing a principal place of business, at least New York and Detroit would also qualify. In this instance, the undersigned finds Defendant's assertion that Detroit, Michigan is its principal place of business, supported by its filing with the Secretary of State of North Carolina, to be satisfactory. Without more convincing evidence to the contrary, the Court will accept Defendant's position on this point.

Plaintiff's final argument contends that the taking of the Rule 30(b)(6) depositions would be more convenient for both sides in Charlotte. As stated above, the undersigned is not persuaded that Plaintiff's convenience argument clearly favors Charlotte.

Based on the foregoing, the undersigned finds that Plaintiff has failed to overcome the presumption recognized by this Court that a corporate defendant's Rule 30(b)(6) deposition be held at the corporation's principal place of business. As such, the undersigned will allow the motion for protective order to the extent that two of Defendant's three representatives shall be deposed in Detroit, Michigan, and the third shall be deposed in Charlotte, North Carolina.

### B. Document Requests

Regarding the request for document production attached to Plaintiff's "...Amended Notice...", Defendant contends that Fed.R.Civ.P. 30(b)(2) makes clear that the procedures of Fed.R.Civ.P. 34 govern. (Document No. 45, p.7). Rule 30(b)(2) provides in pertinent part that "[t]he notice to a party deponent may be accompanied by a request under Rule 34 to produce documents and tangible things at a deposition." Rule 34 allows a party thirty (30) days to respond to a request for document production. Fed.R.Civ.P. 34(b)(2)(a).

Defendant argues that Plaintiff's request for production is an "end-run around the fact that she missed the discovery service cutoff date." (Document No. 45, p.8). Defendant specifically asserts that "[a]fter discovery has closed, or after the time to serve requests has expired, a Plaintiff cannot use deposition notices 'heavily laden with document requests' as a way to circumvent the discovery deadline.'" Id. (quoting Carter v. United States, 164 F.R.D. 131 (D.Mass. 1995)); see also, BKCAP, LLC v. Captec Franchise Trust 200-1, 2010 WL 1710391 at *3 (N.D.Ind. Apr. 26, 2010) ("Requests under Rule 30(b)(2) should be 'few and simple' and 'closely related to the oral

examination,' otherwise the Court may assume that the document requests fall under Rule 34, in which case they may be barred as untimely if made after the written discovery deadline.").

Plaintiff's memorandum in opposition to the motion for protective order fails to offer any argument or authority supporting the document production she has requested. (Document No. 51).

Based on Defendant's arguments and authority, and the lack thereof from Plaintiff, the undersigned will allow the protective order regarding document production, with modification. The undersigned finds that the requested production allowed Defendant less than thirty (30) days to comply; and more importantly, the document requests were served after the deadline for written discovery in this case. However, Defendant shall make available to Plaintiff those documents Defendant's 30(b)(6) representatives rely upon for their deposition preparation and/or testimony.

## CONCLUSION

**IT IS, THEREFORE, ORDERED** that "Defendant Ally Financial Inc.'s Motion For Protective Order" (Document No. 44) is **GRANTED**, as described herein.

**IT IS FURTHER ORDERED** that the **STAY** of the Rule 30(b)(6) deposition(s) is lifted and that all depositions in this matter shall be completed on or before **October 14, 2011**.

**SO ORDERED**.

Signed: September 15, 2011

David C. Keesler
United States Magistrate Judge