# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
## Case No. 3:10cv311

| | |
|---|---|
| **VENUS SPRINGS,** | ) |
| **Plaintiff,** | ) |
| | ) **ORDER** |
| v. | ) |
| **ALLY FINANCIAL INC. fka, GMAC INC.,** | ) |
| **Defendant.** | ) |

**THIS MATTER** comes before the Court on Plaintiff Venus Springs's ("Plaintiff") Objections to the Magistrate judge's Discovery Order of September 15, 2011, (Doc. No. 58), Defendant Ally Financial, Inc. fka GMAC, Inc.'s ("Defendant") Motion for Summary Judgment, (Doc. No. 49), and Plaintiff's Motion for Leave to File Supplemental Memorandum in Opposition to Defendant's Motion for Summary Judgment and Incorporated Relief, (Doc. No. 63).

## I. BACKGROUND

Defendant hired Plaintiff to negotiate and assist negotiations with outside law firms, including Mayer Brown, in order to reduce Defendant's legal spending in October 2008. (Doc. No. 50-2: Plaintiff's Dep. at 7, 14-15, 19). When Plaintiff interviewed for her job with Defendant she failed to divulge that she was fired from Mayer Brown. (Doc. No. 50-2: Plaintiff Dep. at 22). Plaintiff admits that she was "forced to resign," but contends that this was not a "firing." (Doc. No. 57 at 1, 3). Plaintiff told Defendant that she voluntarily left Mayer Brown in search of a better work/life balance, (Doc. Nos. 50-2: Plaintiff Dep. at 22; 50-7 at 1; 50-8 at 1; 50-9 at 1). Plaintiff argues that she may have said this in relation to why she wanted to go in-house, rather than work

for another firm. (Doc. No. 57 at 3). Plaintiff was then offered the position, contingent upon her passing a background check. (Doc. No. 50-8: Boque Declaration). But Plaintiff omitted that she ever worked for Mayer Brown on her background check form. (Doc. No. 8-1: Complaint at 60-61). Accordingly, the background check firm never inquired with Mayer Brown to find out what had actually happened. (Doc. No. 50-8: Boque Declaration).

Shortly after starting work with Defendant, Plaintiff filed an EEOC discrimination charge against Mayer Brown. (Doc. No. 50-4). In April 2009, Plaintiff authored a document called "Mayer Brown LLP, Background for Negotiation" and took part in discussions regarding strategies for fee negotiations with Defendant's legal vendors, including Mayer Brown. (Doc. No. 50-2: Plaintiff's Dep. at 56-60). Plaintiff argues that this document was just one of fifty negotiation background reports she prepared and stresses that she was never tasked with directly contacting Mayer Brown. (Doc. No. 57 at 4). One month later, Plaintiff filed a lawsuit against the firm. (Doc. No. 50-2 at 64-70).

Defendant's Conflict of Interest Policy requires employees to "[u]se the GMAC Conflict of Interest Questionnaire to notify leadership of any potential conflict–even if you think it probably isn't a problem. Fully disclose any activity, investment, employment, or relationship that could create even the appearance of a possible conflict. . . Don't . . . [f]ail to notify leadership with full disclosure of any potential conflict." (Doc. No. 8-1 at 32). Defendant's Conflict of Interest Form further defines a conflict of interest to include "any activity or interest that could conflict with or appear to conflict with your responsibilities to GMAC." (Doc. No. 57-22 at 2). Plaintiff reviewed this policy when she began work. (Doc. No. 50-2 at 32).

Just before filing suit against Mayer Brown in May, Plaintiff reviewed Defendant's Conflict of Interest Policy again. (Doc. No. 50-2: Plaintiff's Dep. at 32-33). Plaintiff then conferred with

2

her attorney about whether there was any possible conflict of interest. (Id. at 37). Plaintiff decided that she had no conflict and did not inform Defendant about her lawsuit, EEOC charge, or firing. (Id. at 37-38). In the event she was asked to directly negotiate with Mayer Brown, Plaintiff planned to ask another co-worker to handle the talks. (Id. at 31). Plaintiff now asserts that she took these actions because she believed that Defendant may try to discriminate against her and use a fabricated conflict of interest as pretext. (Doc. No. 50-2: Plaintiff's Dep. at 40-41).

In June, one of Defendant's in-house attorneys noticed an article about Plaintiff's suit against Mayer Brown on a website. (Doc. No. 50-8 at 2). The lawsuit revealed that Plaintiff had withheld the true reason she left Mayer Brown and that she was in an adversarial position with one of Defendant's largest legal vendors, whose fee Plaintiff was tasked with helping her superiors reduce. (Id.). Defendant began an investigation into a possible conflict of interest. (Id.). After two of Defendant's employees confronted Plaintiff about the conflict, Plaintiff asked Calvin Rose to assist in any negotiations with Mayer Brown "[i]n order to avoid any potential concerns by anyone regarding a conflict of interest." (Doc. No. 57-26).

After this investigation revealed the above facts, Defendant fired Plaintiff on July 10, 2009. (Id. at 3). Defendant informed Plaintiff that it was terminating her employment because of her "lack of integrity and misrepresentations to [Defendant] during the hiring process and her failure to disclose an actual, potential, or perceived conflict of interest." (Doc. No. 50-5: Declaration of Kathleen Patterson at 2); see also (Doc. No. 50-2: Plaintiff Dep. at 52). Defendant did not have a specific discipline or termination policy at ths time. (Doc. No. 63-7 at 25-29).

Plaintiff presents evidence that another employee, Nita Gooding, harassed another African-American female employee, Monique Rue, in the summer of 2009. (Doc. No. 63-5). Ms. Rue sued Defendant for forcing her to resign, but the Court ultimately dismissed her claim for her failure to

3

obey court orders or participate in discovery. (Case No. 3:10-cv-62, Doc. No. 40). Plaintiff presents the complaints in six other retaliation lawsuits filed against Defendant since 2007. (Doc. No. 63-4).

## II. ANALYSIS

### A. Discovery Order

#### 1. Standard of Review

The district court has authority to assign non-dispositive pretrial matters pending before the court to a magistrate judge to "hear and determine." 28 U.S.C. § 636(b)(1)(A). When reviewing an objection to a magistrate judge's order on a non-dispositive matter, the district court must set aside or modify any portion of that order which is clearly erroneous or contrary to law. FED. R. CIV. P. 72(a). A magistrate judge's order is contrary to law if the judge failed to apply, or misapplied, statutes, case law, or procedural rules. See Catskill Dev. LLC v. Park Place Entm't Corp., 206 F.R.D. 78, 86 (S.D.N.Y. 2002).

#### 2. Analysis

The Magistrate Judge granted Defendant a protective order, relieving it of the obligation to attend 30(b)(6) depositions away from its principal place of business and to respond to Plaintiff's document requests submitted with its deposition notices. (Doc. No. 55). Plaintiff objected only to the Magistrate Judge's decision regarding the location of the 30(b)(6) depositions. (Doc. No. 58 at 1).

"With respect to location, it is well-settled that the 'deposition of a corporation through its agents or officers should normally be taken at the principal place of business of the corporation.'" Belk, Inc. v. Meyer Corp., No. 3:07-cv-168, 2009 WL 703704, at *5 (W.D.N.C. Mar. 16, 2009) (Keesler, Mag.) (quoting Turner v. Prudential Ins. Co. of Am., 119 F.R.D. 381, 383 (M.D.N.C. 1988)). Plaintiff argues that Charlotte is Defendant's principal place of business, but Defendant's

4

corporate filings and the location of the 30(b)(6) deponents belie that argument. See Ally Financial's Corporate Filings, http://www.secretary.state.nc.us/corporations/Corp.aspx?PitemId=9174571 (last visited November 10, 2011); (Doc. No. 45 at 7). The Magistrate Judge's finding that Defendant's principal place of business is Detroit is not clearly erroneous.

Plaintiff argues that traveling to Detroit would be a hardship, justifying a departure from the general practice. (Doc. Nos. 51; 58; 62). This is not enough. If the Court were to allow the depositions near Plaintiff's residence, the 30(b)(6) deponents would instead be the ones to incur those same travel expenses. The Magistrate Judge's protective order insulating Defendant's corporate representatives from the need to travel to Charlotte is not clearly erroneous. Plaintiff's Objections to the Magistrate judge's Discovery Order of September 15, 2011, (Doc. No. 58), are **DENIED**.

B.  Motion for Leave to Supplement

Although the Magistrate Judge gave Plaintiff until September 26, 2011 to respond to Defendant's Motion for Summary Judgment, (Doc. No. 54), he gave her until October 14, 2011 to conduct her depositions, (Doc. No. 55 at 11). The Magistrate Judge stated that "[i]f Plaintiff obtains relevant information at a later date and seeks to supplement her response, the Court will give appropriate consideration to a proper motion seeking such relief." (Doc. No. 54 at 1). Plaintiff conducted a 30(b)(6) deposition on October 14, and now seeks to admit the transcript from that deposition and her earlier depositions. (Doc. No. 63). Aside from the belated 30(b)(6) deposition, however, it is unclear why Plaintiff waited forty-six days after her response deadline to file her new evidence.

Nonetheless, because Plaintiff is proceeding pro se and the Magistrate Judge expressly

5

provided for post-deadline discovery, the Court will consider Plaintiff's new evidence. Plaintiff's Motion for Leave to File Supplemental Memorandum in Opposition to Defendant's Motion for Summary Judgment and Incorporated Relief, (Doc. No. 63), is **GRANTED**.

    C.    <u>Summary Judgment</u>

        1.    Standard of Review

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. <u>Id.</u>

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. That party "must set forth specific facts showing that there is a genuine issue for trial." <u>Id.</u> at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. <u>Id.</u> at 324. Instead, that party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248; <u>accord</u> <u>Sylvia Dev. Corp. v. Calvert Cnty., Md.</u>, 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. <u>Anderson</u>, 477

U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

The Court has not entered a Roseboro order in this case. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975). While the Court must ordinarily provide pro se litigants fair notice of the requirements of the summary judgment rule, Plaintiff is no ordinary pro se litigant. Plaintiff is an attorney and has ably responded to Defendant's motion. (Doc. Nos. 8-1: Complaint at 7; 57). Plaintiff moved for, and the Magistrate Judge granted, an extension of time to respond to Defendant's motion. (Doc. Nos. 52; 54). Plaintiff filed thirty exhibits with her memorandum in opposition. (Doc. No. 57). She has also now filed another seventeen exhibits with her motion to supplement. (Doc. No. 63). Defendant's motion is ripe for review.

    2.    Analysis

        a.    **Racial Discrimination**

Plaintiff alleges that Defendant fired her because of her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the North Carolina Equal Employment Practices Act ("NCEEPA"), N.C. GEN. STAT. § 143-422.2.[1] (Doc. No. 8-1 at 15-19). The elements of proving racial discrimination are the same under Title VII, section 1981, and the NCEEPA. See Spriggs v. Diamond Auto Glass, 242 F.3d 179, 184 (4th Cir. 2001) (Title VII and section 1981 share common elements); N.C. Dep't of Corr. v. Gibson, 301 S.E.2d 78, 85 (N.C. 1983) (NCEEPA claims are

---

[1] Plaintiff argues that she is not proceeding under the NCEEPA, but instead "a common law cause of action for wrongful termination in violation of the public policy of North Carolina, as expressed in the NCEEPA." (Doc. No. 57 at 24). Plaintiff then states that her cause of action should be evaluated under the same standards as Title VII claims. (Id. at 25). In either case, the Court analyzes her state claim under the Title VII framework.

7

evaluated under Title VII framework).

Where, as here, Plaintiff lacks any direct evidence of racial discrimination, the Court must analyze her claim under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). Bonds v. Leavitt, 629 F.3d 369, 386 (4th Cir. 2011). The parties both argue this case as a disparate discipline case. (Doc. Nos. 50 at 14; 57 at 18).

> To establish a prima facie case of racial discrimination in the enforcement of employee disciplinary measures under Title VII, the plaintiff must show: (1) that he is a member of the class protected by Title VII, (2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against him were more severe than those enforced against those other employees.

Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993). But the allegedly disparate discipline was Plaintiff's firing. The Fourth Circuit has held that the prima facie case in discriminatory termination suits requires the plaintiff to show:

> (1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class.

Miles v. Dell, Inc., 429 F.3d 480, 485 (4th Cir. 2005); see also Holland v. Washington Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007).

Neither party briefed this standard. The Court need not answer this question without the parties' aid, however, because even assuming Plaintiff made her prima facie case, her complaint must be dismissed. Bonds, 639 F.3d at 386 (affirming summary judgment without analyzing prima facie requirements where plaintiff failed to satisfy later McDonnell Douglas prongs).

Once a plaintiff makes out her prima facie case, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's [termination]."

8

McDonnell Douglas, 411 U.S. at 802. Defendant has met this burden. Defendant informed Plaintiff that it was terminating her employment because of her "lack of integrity and misrepresentations to [Defendant] during the hiring process and her failure to disclose an actual, potential, or perceived conflict of interest." (Doc. No. 50-5: Declaration of Kathleen Patterson at 2); see also (Doc. No. 50-2: Plaintiff Dep. at 52).

"[O]nce an employer has met its burden of producing a legitimate nondiscriminatory explanation for its decision, the plaintiff is afforded the 'opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were pretext for discrimination.'" Dennis v. Columbia Colleton Medical Ctr., Inc., 290 F.3d 639, 646 (4th Cir. 2002) (quoting Tex. Dep't. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Plaintiff has failed to show that Defendant's stated reasons were pretext.

Plaintiff argues that she had no conflict of interest and that her position had very limited, if any, involvement with Mayer Brown. (Doc. No. 57 at 21-23). She admits, however, to authoring a document called "Mayer Brown LLP, Background for Negotiation" and taking part in discussions regarding strategies for fee negotiations with Defendant's legal vendors, including Mayer Brown. (Doc. No. 50-2: Plaintiff's Dep. at 56-60).

Plaintiff's brief is replete with attacks against Mayer Brown. See (Doc. No. 57 at 1). Plaintiff firmly believes that her termination from Mayer Brown was based on discrimination and expresses a great deal of animus against the firm. (Id.) (describing the firm's actions as "cruel and unusual"). This feeling alone should have alerted Plaintiff to a potential conflict of interest.

The North Carolina Rules of Professional Conduct should also have signaled a potential conflict to Plaintiff. Plaintiff is a member of the North Carolina bar. (Doc. No. 8-1 at 7). North Carolina Rule of Professional Conduct 1.7(a)(2) prohibits an attorney from representing a client "if

9

the representation involves a concurrent conflict of interest." This Rule provides that a concurrent conflict of interest exists if "the representation of one or more clients may be materially limited by the lawyer's responsibilities to another client, a former client, or a third person, or by a personal interest of the lawyer." Id. The commentary explains further that a "conflict of interest exists if a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client may be materially limited as a result of the lawyer's other responsibilities or interests." N.C. Rule of Professional Conduct 1.7 cmt. 9.

Plaintiff's duty to objectively help Defendant prepare to negotiate legal fees with Mayer Brown was likely limited by her personal feelings toward the firm. See also (Doc. No. 57-7: Patterson Dep. at 23) ("the conflict of interest in my view here is you had a contentious relationship with a former employer, you are now sitting in a role that requires you help identify the sourcing strategy for the legal group"). Plaintiff may have been tempted to suggest an unduly hard line in negotiations, hoping that Mayer Brown would lose Defendant's business. Plaintiff may also have been tempted to use her position with Defendant to persuade Mayer Brown to settle her discrimination suit or risk losing a large client. Defendant may have been rightly concerned that regardless of Plaintiff's motives, Mayer Brown may view its efforts to control legal costs as nothing more than Plaintiff's personal vengeance.

In any event, Plaintiff's actions suggest that she appreciated the potential for a conflict of interest–or at least the appearance of one. She discussed the matter with her attorney before filing her lawsuit against Mayer Brown. (Doc. No. 50-2: Plaintiff's Dep. at 37). Defendant's policy requires Plaintiff to divulge any potential conflict–"even if you think it probably isn't a problem." (Doc. No. 8-1 at 32). Whether a conflict actually existed is immaterial. Plaintiff thought their might be a conflict, but did not abide by Defendant's policy. Shortly after Defendant discovered this fact,

it terminated Plaintiff's employment.

To the extent Plaintiff did violate the Conflict of Interest Policy, she argues that a white, male coworker received less severe discipline for comparable misconduct. (Doc. No. 57 at 19-20). Plaintiff asserts that Hugh Benton failed to reveal to Defendant that Mayer Brown hired his son, despite Benton's regular negotiations with Mayer Brown on Defendant's behalf. (Id.). But this is plainly false. Benton promptly revealed this possible conflict of interest to Defendant. (Doc. No. 59-2). Confronted with this fact, Plaintiff now argues that Benton did not file the official form when revealing this potential conflict to his superiors. (Doc. No. 63-1 at 13). This alleged peccadillo is much less egregious than Plaintiff's absolute failure to divulge her conflict. Plaintiff also offers her speculation that Benton has not actually divulged his conflict and that Defendant is engaging in a coverup. (Id. at 14). This evidence is inadmissible.

Plaintiff argues that Tammy Hamzehpour is another employee who has a relative working for Mayer Brown. (Id.). Plaintiff further speculates that Hamzehpour has not divulged this potential conflict. (Id.). Plaintiff also points to a friendship between "the President of GMAC" and a lawyer at McGuireWoods. (Id.). Plaintiff has not presented any admissible evidence that either of these potential conflicts of interest were kept secret from Defendant or that such violations were discovered and treated less severely than Defendant treated Plaintiff.

Plaintiff argues that because she was fired within a month of Defendant learning of her EEOC charge and lawsuit against Mayer Brown, retaliation and discrimination were the true motives behind Defendant's actions. (Id.). But under the circumstances, this temporal proximity proves nothing. It was the revelation of Plaintiff's suit against Mayer Brown that alerted Defendant to Plaintiff's dishonesty in her application process and failure to disclose a potential conflict of interest. (Doc. No. 58: Boque Declaration at 2). Both purported reasons came into being at the same time.

11

Thus, timing alone cannot prove which motive caused Defendant's actions. See King v. Rumsfeld, 328 F.3d 145, 151 (4th Cir. 2003) (closeness in time "far from conclusively establishes the requisite causal connection").

Plaintiff also argues that Defendant's failure to establish a set policy for discipline or termination is evidence of pretext. (Doc. No. 63-1 at 3). Evidence of discretion in firing an employee for breaching the employer's specific policies is not alone sufficient to defeat summary judgment. The cases Plaintiff relies upon included "strong statistical proof" of disparate discipline or termination. (Doc. No. 63-1) (citing Lilly v. Harris-Teeter Supermarket, 720 F.2d 326, 336-37 (4th Cir. 1983); Sledge v. J.P. Stevens & Co., 585 F.2d 625, 635 (4th Cir. 1978)). Plaintiff has not presented any statistical evidence of discrimination. Plaintiff also points to Harris v. Marsh, 679 F. Supp. 1204, 1281 (E.D.N.C. 1987), reversed in part by Blue v. U.S. Dep't of Army, 914 F.2d 525 (4th Cir. 1990). There, the Eastern District stated that evidence of irregular or suspect employment procedures could help the plaintiff establish her prima facie case. Id. Here, the Court has presumed that Plaintiff has cleared that hurdle.

Plaintiff also points to Dotson v. Pfizer, Inc., 558 F.3d 284 (4th Cir. 2009) for the proposition that without a clear termination policy, firing her for violating the conflict of interest policy is suspect. But in Dotson, the ambiguous policy was the one that the employee breached (regarding whether he was permitted to distribute pharmaceutical samples). Id. at 296-97. Here, Plaintiff argues that the termination policy was unclear. (Doc. No. 63-1 at 6). Defendant's policy that employees must disclose possible conflicts of interest was clearly defined. Dotson is inapposite.

Plaintiff also asserts that Defendant's failure to fire Mayer Brown as a legal vendor because of Plaintiff's discrimination claims against the firm is evidence of pretext. (Doc. No. 63-1). This claim is meritless. Defendant's failure to fire Mayer Brown as a legal vendor is not evidence that

Plaintiff's lack of candor was not the true reason for her dismissal.

Plaintiff points to seven other retaliation or discrimination suits filed against Defendant since 2007. (Doc. No. 63-1 at 2-3). But Plaintiff only provided the Court with evidence supporting the claims of one of those plaintiffs: Monique Rue. (Id.). Plaintiff has filed an affidavit from Rue claiming that she was forced to resign due to racial harassment. (Doc. No. 63-5). But Rue points only to Nita Gooding as the offending supervisor. Plaintiff does not allege that Gooding has any relation to Plaintiff's firing. Evidence that one of Defendant's other employees discriminated against one other person within in the plaintiff's protected demographic is not admissible to prove pretext or discriminatory intent in this case.

Plaintiff has not presented any other proof that Defendant's stated reason for terminating her was false. Summary judgment is appropriate where Plaintiff cannot put forward admissible evidence of pretext. King, 328 F.3d at 154. Plaintiff's claims of racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and North Carolina state law are all **DISMISSED**.

b. **Retaliation**

Plaintiff alleges that Defendant fired her "in direct retaliation for having previously filed a Title VII charge of discrimination with the EEOC and a race discrimination complaint against Mayer Brown, one of Defendant's largest vendors of legal services." (Doc. No. 8-2 at 15-16). Plaintiff couches this claim within Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the policy announced by the North Carolina Equal Employment Practices Act ("NCEEPA"), N.C. GEN. STAT. § 143-422.2. (Doc. No. 8-1 at 15-19).

North Carolina law does not recognize such a claim. "While this provision [of the NCEEPA] clearly pronounces the State's public policy, it provides no remedy for its violation." Strickland v.

13

Jewell, 562 F. Supp. 2d 661, 674 (M.D.N.C. 2007); see also McLean v. Patten Communities, Inc., 332 F.3d 714, 719 (4th Cir. 2003) ("there is no private right of action under North Carolina law for retaliation under [the NCEEPA]"). Plaintiff's North Carolina state law illegal retaliation claim is **DISMISSED**.

Like in the discrimination context, the elements of proving retaliation are the same under Title VII and section 1981. See Spriggs, 242 F.3d at 184. Plaintiff lacks any direct evidence of retaliation, so the Court must analyze her claim under the burden-shifting framework of McDonnell Douglas, 411 U.S. at 802-05. "The test for proving *prima facie* retaliatory discharge requires that (1) plaintiff engaged in protected activity, such as filing an EEO[C] complaint; (2) the employer took adverse employment action against plaintiff; and (3) a causal connection existed between the protected activity and the adverse action." Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994).

Plaintiff has met this burden. Plaintiff engaged in protected activity by both filing an EEOC complaint and a lawsuit against Mayer Brown. King, 328 F.3d at 151 (EEOC complaint protected activity); Laughlin v. Metropolitan Washington Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998) (participation in Title VII proceeding protected activity). Defendant fired Plaintiff. (Doc. No. 50-2: Plaintiff Dep. at 52). The close temporal connection between Defendant learning of Plaintiff's protected activities and its termination of her employment is sufficient to meet this initial prima facie burden. See King, 328 F.3d at 151 ("While this proof far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a prima facie case of causality").

Defendant has also met its burden "to articulate some legitimate, nondiscriminatory reason for the employee's [termination]." McDonnell Douglas, 411 U.S. at 802. As noted above, Defendant informed Plaintiff that it was terminating her employment because of her "lack of

integrity and misrepresentations to [Defendant] during the hiring process and her failure to disclose an actual, potential, or perceived conflict of interest." (Doc. No. 50-5: Declaration of Kathleen Patterson at 2); see also (Doc. No. 50-2: Plaintiff Dep. at 52).

As also discussed above, Plaintiff has failed to show that Defendant's stated reasons were pretext. See Dennis, 290 F.3d at 646. The temporal proximity alone is insufficient to satisfy this prong of the McDonnell Douglas inquiry. See King, 328 F.3d at 154 (affirming summary judgment despite such close timing between protected activity and termination to satisfy prima facie causation requirement). Thus, Plaintiff's claims of illegal retaliation in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 are **DISMISSED**.

### III. CONCLUSION

Neither the Magistrate Judge's finding that Defendant's principal place of business is Detroit nor his protective order insulating Defendant's corporate representatives from the need to travel to Charlotte are clearly erroneous. Plaintiff's Objections to the Magistrate judge's Discovery Order of September 15, 2011, (Doc. No. 58), are **DENIED**.

Plaintiff failed to present evidence that Defendant's stated reason for terminating her employment was pretext for either racial discrimination or illegal retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and North Carolina state law. These claims are **DISMISSED**.

Because North Carolina does not recognize a state law claim for illegal retaliation, Plaintiff's state retaliation claim is **DISMISSED**.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Objections to the Magistrate Judge's Discovery Order of July 20, 2011, (Doc. No. 41), are **DENIED**;

15

2. Plaintiff's Motion for Leave to File Supplemental Memorandum in Opposition to Defendant's Motion for Summary Judgment and Incorporated Relief, (Doc. No. 63), is **GRANTED**;

3. Defendant's Motion for Summary Judgment, (Doc. No. 49), is **GRANTED**; and

4. Plaintiff's case is **DISMISSED**.

Signed: January 27, 2012

Max O. Cogburn Jr.
United States District Judge