UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Case No. 3:10-cv-311-MOC-DCK

| | |
|---|---|
| VENUS SPRINGS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ALLY FINANCIAL, INC. f/k/a ) <br> GMAC INC., AMY BOUQUE, ) <br> KATHLEEN PATTERSON, ) <br> YEQUIANG HE and CYNTHIA ) <br> DAUTRICH, ) <br> ) <br> Defendants. ) | MEMORANDUM IN SUPPORT OF <br> MOTION FOR PROTECTIVE <br> ORDER |

Plaintiff has taken video footage from the Rule 30(b)(6) deposition of Defendant Ally Financial, Inc. ("Ally") and used it to make a YouTube video defaming Ally and its corporate representative, Defendant Amy Bouque. This is an abuse of the discovery process. Ally and Ms. Bouque therefore request a protective order requiring that the deposition video be used only for purposes of this litigation, and that the video be removed from Plaintiff's YouTube site.

**Facts**

Plaintiff, a former employee of Ally, filed this lawsuit against Ally and a number of Ally employees claiming she was fired because of her race in violation of Title VII of the Civil Rights Act of 1964 and the North Carolina Equal Employment Practices Act. (Doc. No. 8-1.)

Less than a month before the close of discovery, Plaintiff noticed a Rule 30(b)(6) deposition of Ally for Charlotte, North Carolina. The deposition notice was accompanied by extensive (and untimely) document requests. Ally sought and obtained a protective order requiring the deposition to take place in Detroit, Michigan (which is Ally's principal place of

1

business and the state of residence of the Rule 30(b)(6) witness whom Ally made available), and circumscribing the scope of Plaintiff's document requests. (Doc. No. 55.)

The Rule 30(b)(6) deposition took place on October 14, 2011. It was videotaped. Ally's corporate representative for the deposition was Defendant Amy Bouque.

Ally moved for summary judgment in the action.[1] (Doc. No. 49.) Plaintiff, in her opposition to Ally's motion, filed the Rule 30(b)(6) deposition transcript with the Court. (Doc. No. 63-7.) Notably, the videotape from the deposition was not filed with the Court, and the video itself was not relied on by the Court in adjudicating the summary judgment motion.

The Court granted summary judgment in Ally's favor on all claims. (Doc. No. 82.) In its opinion and order, the Court explained that Plaintiff had been hired by Ally to assist in negotiations with outside law firms, specifically including Mayer Brown LLP. Plaintiff, however, had an undisclosed personal dispute with Mayer Brown. She had recently been fired from Mayer Brown when she went to work for Ally. Shortly thereafter, she filed an EEOC discrimination charge, and then a lawsuit, against Mayer Brown. While her undisclosed personal dispute with Mayer Brown was ongoing, Plaintiff was involved in Ally's fee negotiations with Mayer Brown. Her involvement included authoring a document called "Mayer Brown LLP, Background for Negotiation" and taking part in discussions regarding strategies for fee negotiations with Mayer Brown. (*Id*. at 1-2.) Ally found out about Plaintiff's lawsuit against Mayer Brown from news reports and terminated Plaintiff's employment shortly thereafter. (*Id*. at 3.) The Court held that, in light of this undisclosed conflict of interest, Ally had a legitimate nondiscriminatory reason for terminating Plaintiff, that Plaintiff could not show that this reason was a mere pretext, and therefore Ally was entitled to judgment as a matter of law. (*Id*. at 8-13.)

---

[1] All Defendants other than Ally had already been dismissed from the case. (Doc. Nos. 31 & 35.)

The Court's judgment was affirmed in an unpublished *per curiam* opinion by the Fourth Circuit.[2]  (Doc. No. 88.)  Plaintiff's petition to the Fourth Circuit for rehearing and rehearing *en banc* was denied.  (Doc Nos. 89 & 91.)  Plaintiff's petition for a writ of certiorari to the United States Supreme Court was also denied.  *Springs v. Ally Financial Inc.*, 133 S. Ct. 1496 (2013).

A year and a half after the Fourth Circuit's ruling, Plaintiff posted a video on YouTube titled "Amy Bouque Deposition: Best Ways to Tell if A Witness is Lying."  The 37-minute video consists entirely of excerpts from Ms. Bouque's 30(b)(6) deposition, overlaid with audio commentary from Plaintiff.  A copy of the video has been provided to the Court and is designated as Exhibit A to the Declaration of Clifton Brinson filed herewith.  It is available online at https://www.youtube.com/channel/UCoyNTq41LanT9igLfA6-Hdg.  Plaintiff also publicized the video via Twitter (https://twitter.com/VenusSprings/status/446399988436709377) under the line "Just posted – video on how to conduct a deposition and identify deceit." (Brinson Dec. Exhibit B.)

In her commentary in the video, Plaintiff repeatedly accuses Ms. Bouque of lying at the deposition.  Plaintiff claims Ms. Bouque is lying based almost entirely on her hand gestures.  For example, when Ms. Bouque touches her ear during her testimony, Plaintiff states: "The monkey hears no evil.  She doesn't want to hear her own lies."  (Brinson Dec. Exhibit A at 1:13; *see also id*. at 7:35.)  When Ms. Bouque touches her nose, Plaintiff states: "This is one of the worst signs – the Pinocchio.  The deponent's subconscious mind thinks her nose is growing

---

[2] After filing this lawsuit, Plaintiff also filed a lawsuit in the Eastern District of Michigan against Ally and the individual Defendants from this action, as well as additional Ally employees, Mayer Brown LLP, and the United States Department of the Treasury.  *See Springs v. Mayer Brown, LLP, et al*., 2:11-cv-13518-BAF-MJH (E.D. Mich.).  Plaintiff again alleged that her termination from Ally was the result of racial discrimination.  The Eastern District of Michigan held that Plaintiff's discrimination claims were barred by collateral estoppel and res judicata based on the judgment entered by this Court.  *Id*. at Doc. No. 56.  That ruling was unanimously affirmed by the Sixth Circuit.  *Id*. at Doc. No. 60.

3

while she's lying and that everyone can see it, so she tries to cover her nose so we cannot see it growing." (Brinson Dec. Exhibit A at 1:51; *see also id*. at 10:10.) When Ms. Bouque rests her chin on her hands, Plaintiff states: "This gesture is just called the 'liar liar.' . . . She is using her two hands pressed up against her mouth to try to prevent herself from being insincere." (Brinson Dec. Exhibit A at 2:12.)

Plaintiff also adds her commentary on the substance of Ms. Bouque's answers, always with the conclusion that Ms. Bouque has lied. For example, Plaintiff states: "Note how this deponent answers a question that was not even asked. Liars will prepare canned responses without there even being a question." (Brinson Dec. Exhibit A at 5:00.) Plaintiff later states: "Her entire testimony is contradictory and incredible." (Brinson Dec. Exhibit A at 19:09.)

In her video Plaintiff also attacks the Court's ruling on Ally's initial motion for protective order, in which the Court required the Rule 30(b)(6) deposition to take place in Detroit. At the beginning of the video, Plaintiff states: "Now this is a telephone deposition. And telephone depositions are not ideal, especially if you have a hearing deficiency. But welcome to the pro-corporation Fourth Circuit federal court system." (Brinson Dec. Exhibit A at 0:10.)

Around the same time, Plaintiff posted two other videos on YouTube, one entitled "Ally Bank – Agent of the Elite – Doesn't Care About Customers" and the other entitled "Ally Bank – They Don't Represent Your Interests."[3] These videos likewise consist of excerpts from the videotape of Ms. Bouque's Rule 30(b)(6) deposition testimony.[4] Written beneath the videos are

---

[3] The titles of these two videos were subsequently changed, but not the substance of the written attacks accompanying them. (Brinson Dec. ¶¶ 5, 7 & Exhibits C & E.)

[4] Ally Bank is a Utah-chartered commercial bank wholly-owned by IB Finance Holding Company, LLC. Ally Financial Inc. is the sole shareholder of IB Finance Holding Company, LLC. Ally Bank was not even a defendant in the underlying action. And Ms. Bouque, an Ally employee, was not serving as a Rule 30(b)(6) witness for Ally Bank. Plaintiff nevertheless

4

attacks on Ally such as "Ally Bank knows it needs the customer to make money but must deceive the consumer so it will not realize that Ally would rather make its lawyers and accountants happy instead of its customers." (Brinson Dec. Exhibit E.)

On July 2, 2014, counsel for Ally and Ms. Bouque sent Plaintiff a letter demanding that she remove the videos. (Brinson Dec. Exhibit D.) Plaintiff did not respond, and, as of this submission, the defamatory videos are still posted on YouTube.

**Argument**

The sole purpose for the Rule 30(b)(6) deposition in this case was to give Plaintiff the opportunity to obtain evidence to support her claims and defenses in the litigation she initiated in this Court. It was not intended to give Plaintiff raw material to vilify Ms. Bouque or Ally, defendants to the action, or Ally Bank, a separate entity uninvolved with the litigation, in a defamatory YouTube posting. It was not intended to give a losing party the opportunity to besmirch the integrity of this Court following the unfavorable resolution of her case. Nor was it intended to expose a witness who serves to further the discovery process by representing a company wrongfully accused of discrimination to being called a "liar" on the globally accessible internet. Ally therefore requests a protective order to prohibit Plaintiff from using discovery obtained in this case for improper purposes and, in particular, requiring her to remove the video of Ms. Bouque from her YouTube site.

The Federal Rules of Civil Procedure give parties the opportunity to obtain extensive discovery of nonpublic information. Invasive and time-consuming discovery is allowed even for claims that are ultimately dismissed as a matter of law, such as Plaintiff's claims in this case. The purpose of such expansive discovery is to allow parties to obtain in advance of trial the

---

lumps together her accusations about Ally Financial, Ally Bank, and Ms. Bouque without regard for facts.

5

evidence necessary to evaluate their dispute, so they can either reach a negotiated settlement or identify the issues on which a trial is required. *See Hickman v. Taylor*, 329 U.S. 495, 500-01 (1947).

This liberal discovery process, however, is subject to abuse. Litigants may seek to use the discovery process, and information obtained through that process, for purposes other than a full and fair evaluation of the merits of the case. Accordingly, the Supreme Court has held that a trial court has broad authority to issue protective orders governing discovery:

> Liberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes. Because of the liberality of pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c). It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties.

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34-353 (1984) (footnotes omitted).

Rule 26(c) broadly authorizes the Court to issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). The Court has broad discretion to decide when a protective order is appropriate and what type of protection is required. 6 *Moore's Fed. Practice* § 26.101[1][c] (3d ed. 2013) (collecting cases). Rule 26(c) does not impose any deadline on when a protective order may be issued, and the only deadline imposed by the courts is that a Rule 26(c) motion be made in a timely manner. *Brittain v. Stroh Brewery Co.*, 136 F.R.D. 408, 413 (M.D.N.C. 1991). "In determining timeliness, a court should consider all of the circumstances facing the parties." *Id*.

The motion is timely in this case. Ally and Ms. Bouque learned of the video on April 5, 2014, and since then have sought to have the video removed without involving the Court.[5] (Bouque Dec. ¶¶ 6-11.) It has now become apparent, however, that Ally cannot obtain the reasonable and narrow remedy it is seeking (i.e., removal of the video) without judicial intervention.

Such judicial intervention is appropriate in this case. Plaintiff's video is precisely the type of discovery abuse Rule 26 was designed to prevent. The video, which baselessly accuses Ms. Bouque of repeatedly lying under oath, is understandably a source of harm ranging from shock to annoyance to embarrassment to reputational damage for both Ms. Bouque and Ally. (Bouque Dec. ¶¶ 12-13.) Plaintiff has no legitimate basis for using Ms. Bouque's video deposition in the manner that she has. The deposition was allowed for the sole purpose of allowing Plaintiff to pursue her claims in this action. The action is now long ago concluded, in favor of Ms. Bouque and Ally. Yet, the postings live on for the world to see and potentially forever unless this Court provides the protection Ms. Bouque and Ally seek. Plaintiff's claims have been dismissed, and Plaintiff's post-litigation posting of the video to create a derogatory YouTube production is fundamentally inconsistent with the intended purpose of the deposition. *Cf. In re Carrsow-Franklin*, 456 B.R. 753, 758-60 (D.S.C. 2011) (granting motion for protective order preventing public disclosure of a deposition transcript and prohibiting use of the publication, dissemination, or use of the transcript "except where necessary to prepare for and try the case").

---

[5] Ms. Bouque initially requested – both directly and through counsel – that YouTube remove the video. (Bouque Dec. ¶¶ 7-11 & Exhibits A, B & C.) YouTube refused to do so. *Id.* Ally and Ms. Bouque then sent a cease-and-desist letter to Ms. Springs, who likewise refused to remove the videos. (Brinson Dec. Exhibit D.)

Ally Financial and Ms. Bouque therefore respectfully request that the Court either modify the existing protective order (Dkt. No. 55) or enter a new protective order requiring that the video from the Rule 30(b)(6) deposition of Ally may be used only for the purposes of this action and, thus, removed from Plaintiff's YouTube page.

This the 24th day of September, 2014.

Respectfully submitted,

/s/ Clifton L. Brinson
Kirk G. Warner
N.C. State Bar No. 16238
Clifton L. Brinson
N.C. State Bar No. 34331
SMITH, ANDERSON, BLOUNT, DORSETT,
  MITCHELL & JERNIGAN, L.L.P.
P.O. Box 2611
Raleigh, North Carolina 27602-2611
Tel: (919) 821-1220
Fax: (919) 821-6800
Email: kwarner@smithlaw.com
cbrinson@smithlaw.com

# CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2014, I electronically filed the foregoing **MOTION FOR PROTECTICE ORDER** with the Clerk of Court using the CM/ECF system, which will send notification of such to the CM/ECF participants.

/s/ Clifton L. Brinson
Clifton L. Brinson
N.C. State Bar No. 34331
SMITH, ANDERSON, BLOUNT, DORSETT,
   MITCHELL & JERNIGAN, L.L.P.
P.O. Box 2611
Raleigh, North Carolina 27602-2611
Tel: (919) 821-6605
Fax: (919) 821-6800
Email: cbrinson@smithlaw.com