# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:10-CV-311-MOC-DCK

| | |
|---|---|
| VENUS SPRINGS, ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
|   v. ) | **ORDER** |
| ) | |
| ALLY FINANCIAL, INC. f/k/a GMAC INC., ) | |
| AMY BOUQUE, KATHLEEN PATTERSON, ) | |
| YEQUIANG HE, and CYNTHIA DAUTRICH, ) | |
| ) | |
| ) | |
|    Defendants. ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on Defendant Ally Financial, Inc.'s, and Amy Bouque's, "Motion For Protective Order" (Document No. 95). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and immediate review is appropriate. Having carefully considered the motion, the record, and applicable authority, the undersigned will <u>grant</u> the motion.

## BACKGROUND

On June 8, 2010, Plaintiff filed a "Complaint" in the Superior Court of Mecklenburg County, North Carolina, naming Ally Financial Inc. ("Ally" or "Defendant"), Amy Bouque ("Bouque"), Kathleen Patterson ("Patterson"), and Yequiang (Bill) He ("He") as defendants. (Document No. 1-1, p.4). The Complaint asserted claims arising under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq*. and 42 U.S.C. § 1981, as well as a state law claim for wrongful termination. (Document No. 1-1, pp.15-19).

On July 8, 2010, Plaintiff filed an "Amended Complaint" in the Superior Court of Mecklenburg County. (Document No. 8-1). The crux of Plaintiff's action was her alleged

wrongful termination by Defendant Ally on July 10, 2009. (Document No. 8-1, pp.7-8). According to the Amended Complaint, Plaintiff began her employment with GMAC, Inc. in Charlotte, North Carolina during October 2008, as a senior strategic sourcing manager for legal services. Id. at p.7. Plaintiff was hired by GMAC, Inc. "to support the company's legal department by locating legal service vendors or law firms to represent Defendant's interests in assisting the company's legal department in its decisions to purchase legal services." Id. at p.9. Plaintiff contends that she was fired by Defendants because she filed an action against her previous employer, the law firm Mayer Brown, LLP, alleging "inter alia, race based discrimination and unfair and deceptive trade practices." Id. at pp. 7-8. The Amended Complaint asserts that Defendant Ally had stated "grounds for termination for failure to disclose a conflict of interest during the interview process and for misrepresentation during the hiring process." Id. at p.14. Plaintiff, however, contends that Ally's grounds for termination "are a pretext for purposeful discrimination and retaliation for having filed a charge with the EEOC and a claim of race discrimination against one of Defendant Ally's legal vendors, Mayer Brown." Id.

The Court's "Order" (Document No. 31) on November 19, 2010, affirmed the "Memorandum And Recommendation" (Document No. 23): specifically, denying as moot Plaintiff's motion to remand; granting Defendant Ally's motion to dismiss Plaintiff's claim for negligent infliction of emotional distress; granting Defendant Bouque's motion to dismiss; and granting Defendant Dautrich's motion to dismiss. (Document No. 31, p.5). On December 28, 2010, the Court also dismissed Plaintiff's claims against Defendant He and Defendant Patterson. (Document No. 35).

Following the remaining parties' submission of a "Certification And Report Of F.R.C.P. 26(F) Conference And Discovery Plan" (Document No. 36) on January 17, 2011, the Court promptly issued a "Pretrial Order And Case Management Plan" (Document No. 37). Consistent with the parties' uncontested proposal, the deadline for the completion of all discovery was set for July 31, 2011. (Document No. 36, p.1; Document No. 37, pp.1-3).

It appears that there was little, if any, activity in this case from January 25, 2011, until on or about July 12, 2011, almost six (6) months later, when Plaintiff served written interrogatories on Defendant. (Document No. 38, p.1). Plaintiff's discovery requests were thus filed less than twenty (20) days before the deadline for the completion of all discovery. Plaintiff did not file a request to extend the discovery deadline prior to, or contemporaneously with, her discovery requests.

On July 20, 2011, Plaintiff for the first time sought an extension of the discovery deadline. (Document No. 38). Notably, Plaintiff's request was framed as one to allow Defendant Ally time to respond to Plaintiff's interrogatories, but was not consented to by Ally. Id. Defendant Ally *did* consent to an extension of time to complete already scheduled depositions. Id. Based on the foregoing, the undersigned did not find good cause to extend the time for written discovery in this case, and pursuant to the "Pretrial Order..." denied that portion of Plaintiff's motion. (Document No. 39). Noting the parties' consent, the undersigned allowed the parties through August 30, 2011, to complete currently scheduled depositions. (Document No. 39). "Plaintiff's Objections To The Magistrate Judge's Discovery Order Of July 20, 2011" (Document No. 41) was filed August 8, 2011.

On or about August 4, 2011, Plaintiff served her "...Amended Notice Of Rule 30(b)(6) Deposition" (Document No. 45-3) to be held on August 22, 2011, in Charlotte

3

North Carolina. Plaintiff's "...Amended Notice Of Rule 30(b)(6) Deposition" included approximately twenty (20) categories of documents it contends should be produced at the proposed 30(b)(6) deposition(s).

(Document No. 45-3, pp.4-6). "Defendant's Objections To Plaintiff's Amended Notice Of Rule 30(b)(6) Deposition" was served on Plaintiff on or about August 8, 2011. (Document No. 45-5). "Defendant Ally Financial, Inc.'s Motion For Protective Order" (Document No. 44) was filed and referred to the undersigned on August 16, 2011. The Court stayed the pending Rule 30(b)(6) deposition, pending a ruling on "Defendant Ally Financial, Inc.'s Motion For Protective Order" (Document No. 44). (Document No. 48).

On September 15, 2011, the undersigned granted Defendant's first Motion For Protective Order. (Document No. 55). Specifically, the Court allowed the Motion For Protective Order as follows: (1) two of Defendant's three representatives were to be deposed in Detroit, Michigan, and the third in Charlotte, North Carolina; (2) Defendant was directed to "make available to Plaintiff those documents Defendant's 30(b)(6) representatives rely upon for their deposition preparation and testimony"; and (3) all depositions were to be completed by October 14, 2011. (Document No. 55, pp.10-11).

A videotaped Rule 30(b)(6) deposition took place on October 14, 2011, with Ally's corporate representative Amy Bouque. (Document No. 96, p.2; Document No. 63-7).[1] "Plaintiff's Third Amended Notice Of Rule 30(b)(6) Video Deposition" noted that "[t]he deposition will be videotaped . . . and Plaintiff provides notice to Defendant Ally and the other parties to this action that **the deposition may be used at the time of the trial**." (Document No. 63-7, p.40) (emphasis added). The transcript of the 30(b)(6) does not reflect that counsel

---

[1] It appears that Bouque was also deposed on August 25, 2011. (Document No. 57-8).

or the parties made any stipulations regarding custody of the transcript or recording. (Document No. 63-7, pp.37-38); see also Fed.R.Civ.P. 30(b)(5)(C) and (f)(3).

"Defendant Ally Financial, Inc.'s Motion For Summary Judgment" (Document No. 49) was filed on August 30, 2011, and was fully briefed by October 6, 2011. See (Document Nos. 50, 56, 57, and 59). In opposing the motion, Plaintiff filed the 30(b)(6) deposition transcript of Bouque's testimony, but did not file copies of any videotape. (Document No. 57-8). A motion hearing was held by the Honorable Max O. Cogburn, Jr. on January 25, 2012. There is no indication that the video of the 30(b)(6) deposition was submitted or reviewed during the motion hearing, or that it was considered by the Court in reaching a decision on summary judgment. On January 30, 2012, the Court granted "Defendant Ally Financial, Inc.'s Motion For Summary Judgment" (Document No. 49) and dismissed this action. (Document No. 82).

The Court's Judgment was affirmed in an unpublished *per curiam* opinion by the Fourth Circuit. See (Document Nos. 82, 83 and 88.). Plaintiff's petition to the Fourth Circuit for rehearing and rehearing *en banc* was denied. (Document Nos. 89, 91.) Plaintiff's petition for a writ of certiorari to the United States Supreme Court was also denied. Springs v. Ally Financial Inc., 133 S.Ct. 1496 (2013).

> After filing this lawsuit, Plaintiff also filed a lawsuit in the Eastern District of Michigan against Ally and the individual Defendants from this action, as well as additional Ally employees, Mayer Brown LLP, and the United States Department of the Treasury. *See Springs v. Mayer Brown, LLP, et al.*, 2:11-cv-13518-BAF-MJH (E.D. Mich.). Plaintiff again alleged that her termination from Ally was the result of racial discrimination. The Eastern District of Michigan held that Plaintiff's discrimination claims were barred by collateral estoppel and res judicata based on the judgment entered by this Court. *Id*. at Doc. No. 56. That ruling was unanimously affirmed by the Sixth Circuit. *Id*. at Doc. No. 60.

(Document No. 96, p.3, n.2).

5

A year and a half after the Fourth Circuit's ruling, in or about February 2014, Plaintiff posted a video on YouTube titled "Amy Bouque Deposition: Best Ways to Tell if A Witness is Lying." See https://www.youtube.com/channel/UCoyNTq41LanT9igLfA6-Hdg. The 37-minute video consists entirely of excerpts from Bouque's 30(b)(6) deposition, overlaid with audio commentary by Plaintiff. In her commentary in the video, Plaintiff repeatedly suggests that Bouque is lying at the deposition. Plaintiff asserts that Bouque is lying based almost entirely on her hand gestures. Around the same time, Plaintiff posted two other videos on YouTube, one entitled "Ally Bank – Agent of the Elite – Doesn't Care About Customers," and the other entitled "Ally Bank – They Don't Represent Your Interests." These videos likewise consist of excerpts from the videotape of Bouque's Rule 30(b)(6) deposition testimony. Ally and Bouque state that their counsel sent a letter to Plaintiff on July 2, 2014, demanding she remove the videos, but the videos are still posted on YouTube. (Document No. 96, p.5).

Defendant Ally Financial, Inc.'s, and Amy Bouque's, "Motion For Protective Order" (Document No. 95) was filed on September 24, 2014. Plaintiff's "Opposition To Motion For Protective Order" (Document No. 102) was filed on October 29, 2014; and the "Reply Memorandum…" (Document No. 103) was filed on November 7, 2014. The pending motion is now ripe for disposition.

## STANDARD OF REVIEW

Rule 26 of the Federal Rules of Civil Procedure provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears

> reasonably calculated to lead to the discovery of admissible evidence.

Fed.R.Civ.P. 26(b)(1). The rules of discovery are to be accorded broad and liberal construction. See Herbert v. Lando, 441 U.S. 153, 177 (1979); and Hickman v. Taylor, 329 U.S. 495, 507 (1947). However, a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed.R.Civ.P. 26(c)(1). The court has "substantial latitude to fashion protective orders." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984).

**DISCUSSION**

Ally and Bouque (collectively "Movants") contend that Plaintiff has abused the discovery process in this action by taking video footage of the Rule 30(b)(6) deposition and using it to make a YouTube video defaming Defendant Ally and its corporate representative, Amy Bouque. (Document Nos. 95 and 96). Ally and Bouque now seek a protective order, or modification of the existing protective order (Document No. 55), requiring that the video from the 30(b)(6) deposition of Ally only be used for purposes of this action, and thus, removed from YouTube. (Document No. 96, pp.1, 8).

Movants argue that the "sole purpose of the Rule 30(b)(6) deposition in this case was to give Plaintiff the opportunity to obtain evidence to support her claims or defenses in the litigation she initiated in this Court." (Document No. 96, p.5). Movants note that the Federal Rules of Civil Procedure give parties the opportunity to obtain extensive discovery of nonpublic information, and that invasive and time-consuming discovery is allowed for claims that are ultimately dismissed as a matter of law, such as Plaintiff's claims in this case. Id. See also, Hickman v. Taylor, 329 U.S. 495, 501 (1947) ("The various instruments of discovery now serve (1) as a device, along with the pre-trial hearing under Rule 16, to narrow and clarify the basic

7

issues between the parties, and (2) as a device for ascertaining the facts, or information as to the existence or whereabouts of facts, relative to those issues.").

Movants go on to note that the liberal discovery process is subject to abuse, and that the Supreme Court has accordingly held that a trial court has broad authority to issue protective orders governing discovery:

> Liberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes. Because of the liberality of pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c). It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties.

(Document No. 96, p.6) (quoting Seattle Times Co. v. Rhinehart, 467 U.S. 20, 34-35 (1984)).

On the issue of discovery, the undersigned finds the follow caselaw instructive:

> Generally speaking, dissemination of pretrial discovery materials by the receiving party is not prohibited absent a protective order. See Burgess v. Town of Wallingford, No. 3:11CV1129(CSH), 2012 WL 4344194, at *9 n.17 (D.Conn. Sep. 21, 2012); Schiller v. City of New York, No. 1:04CV7921(KMK)(JCF), 2007 WL 136149, at *2 (S.D.N.Y. Jan. 19, 2007) (citing courts of appeal). Nonetheless, dissemination for non-judicial purposes is unusual and rightly so. The discovery rules are "a matter of legislative grace." Seattle Times, 467 U.S. at 32, 104 S.Ct. 2199. They compel parties, including third parties, to divulge information "for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes." Id. at 34, 104 S.Ct. 2199. The liberality of this process creates "a significant potential for abuse" such as delay, expense, misuse of court process and damage to the reputation and privacy of litigants and third parties. Id. at 34–35, 104 S.Ct. 2199. **Courts therefore must be mindful that the purpose of discovery is "to facilitate orderly preparation for trial, not to educate or titillate the public**." Joy v. North, 692 F.2d 880, 893 (2d Cir. 1982). Although the details underlying a particular litigation might hold some interest for many members of the public, virtually all

> [members of the public] have an interest in ensuring that everyone in our society ha[s] access to a fair and impartial judicial system without having to pay too high a price of admission in the form of the surrender of personal privacy. Thus, **courts must be vigilant to ensure that their processes are not used improperly for purposes unrelated to their role**.
>
> Paisley Park Enterprises v. Uptown Prods., 54 F.Supp.2d 347, 349 (S.D.N.Y. 1999).

DaCosta v. City of Danbury, 298 F.R.D. 37, 39-40 (D.Conn. 2014) (emphasis added); see also, Burgess v. Wallingford, 2012 WL 4344194, at *14 (D.Conn. Sept. 21, 2012) (holding that audio recordings of deposition could be used solely by parties to prepare for trial, no party was allowed to publish or disseminate recordings without prior permission of court).

Movants also assert that the instant motion is timely. (Document No. 96, p.7). Ally and Bouque contend that Rule 26(c) does not impose any deadline for when a protective order may issue, and that a court should consider all circumstances facing the parties. (Document No. 96, p. 6) (citing Brittain v. Stroh Brewery Co., 136 F.R.D. 408, 413 (M.D.N.C. 1991)).

> A motion for a protective order is timely if made prior to the date set for producing the discovery. In determining timeliness, a court should consider all of the circumstances facing the parties. Thus, a failure to request a protective order prior to the time set for producing the discovery may be excused for good cause such as lack of sufficient time or opportunity to obtain the order.

(Document No. 103, p.4) (quoting Brittain v. Stroh Brewery Co., 136 F.R.D. at 413). Movants contend that they could not have foreseen the alleged abuse of the discovery process, and timely sought relief once they learned of the video posting(s) on April 5, 2014. (Document No. 96, p.7; Document No. 103, p.4).

At the outset of her "Opposition to Motion For Protective Order," Plaintiff asserts that the "gravamen of defendants' complaint is not the disclosure of discovery material but the plaintiff's

commentary *about* discovery material, which lies outside the reach of this Court." (Document No. 102, p.1).

Plaintiff then argues that the Seattle Times case is inapplicable here. (Document No. 102, pp.2-4). Plaintiff seems to assert that Seattle Times does not apply because it held that "restraints placed on discovered, **but not yet admitted**, information are not a restriction on a traditionally public source of information." (Document No. 102, p.3) (quoting Seattle Times, 467 U.S. at 33). Plaintiff notes that: "[o]nce the documents are made part of a dispositive motion, such as a summary judgment motion, they "lose their status of being 'raw fruits of discovery.'"" (Document No. 102, p.3) (quoting Rusford v. New Yorker Magazine, Inc., 846 F.2d 249, 252 (4th Cir. 1988)).

Plaintiff further asserts that "Seattle Times and its progeny are simply inapplicable here" because "defendants do not seek protection against disclosure of information in the Amy Bouque deposition," and "the deposition transcript itself has been made part of the public record in this case." (Document No. 102, p.4). Plaintiff also reiterates her contention that Movants seek to restrain her commentary, not the videos: "plaintiff's expression of opinions about the defendants is beyond the reach of the rules of civil procedure and cannot be restrained through protective order." (Document No. 102, pp.6-7).

In "Reply…" Movants assert that they "are not asking the Court to limit what Plaintiff may say about Ms. Bouque or Ally Bank. They are merely asking that Plaintiff not be allowed to use discovery from this lawsuit to convey her message." (Document No. 103, p.2). Movants note that contrary to Plaintiff's arguments, the deposition video at issue was never filed with the Court, never shown at a hearing, and never used at trial. Id. Thus, applying Plaintiff's own

interpretation, the video of the 30(b)(6) deposition was never "admitted" and never lost its status as a "raw fruit of discovery."

Movants also argue that a video is different from a transcript. Id. (citing Williams v. Bridgeport Music, Inc., 2:13-cv-6004 (C.D.Cal. Sept. 12, 2014). They contend that unlike the deposition transcript, the unfiled "deposition video was –and should remain –purely a matter of nonpublic pretrial discovery." (Document No. 103, p.3).

Movants conclude that they need not satisfy First Amendment scrutiny, rather they "are entitled to a protective order simply upon a showing of good cause." (Document No. 103, p.3) (citing Fed.R.Civ.P. 26(c)(1); Glasser v. A.H. Robins Co., Inc., 950 F.2d 147, 149 (4th Cir. 1991); and In re Alexander Grant & Co.. Litig., 820 F.2d 352, 355 (11th Cir. 1987)).

The undersigned finds Ally and Bouque's arguments and authority convincing. In short, the Court finds good cause to restrict Plaintiff's use of discovery from this lawsuit that was never filed or otherwise made public during the litigation. The Court finds Seattle Times and its progeny instructive and applicable.

For example, the court in Larson v. American Family Mutual Ins. Co., considered a defendant's request for a protective order to "prevent Plaintiff's counsel from using clips of the video depositions from this case in later seminars allegedly for his own commercial gain." Larson v. American Family Mutual Ins. Co., 2007 WL 622214, at *1 (D.Colo. Feb. 23, 2007). Citing Seattle Times approvingly, the Larson court decided that:

> the Court limits the continuing effect of the protective order after the conclusion of the case to the following: **video depositions taken in this case may not be used for any purpose unrelated to this lawsuit, unless that portion of the deposition is admitted at trial into evidence and is, therefore, properly a part of the public record**.

Larson, 2007 WL 62214 at *2. (Emphasis added).

11

Barket v. Clark, citing Seattle Times and Larson, also provides useful guidance to this case:

> Good cause for the issuance of a protective order in this case is supported by the fact that the subject dispute concerns each party's alleged improper use of the internet to harm the other. . . .
>
> Based on the foregoing, the Court finds that good cause exists for entry of a protective order that precludes either party from publicly disseminating, on the internet or otherwise, the depositions of the parties taken in this action. This order does not preclude either party from hereafter publishing deposition testimony that is admitted into evidence at trial and thereby becomes part of the public record. The Court further orders that the depositions shall not be disclosed to third persons who have no interest or involvement in this action, except as may be authorized by future court order.

Barket v. Clark, 2013 WL 647507, at *3-4 (D.Nev. Feb. 21, 2013); see also, Stern v. Cosby, 529 F.Supp.2d 417 (Dec. 12, 2007) (protective order allowed prohibiting release of deposition video and transcript).

Based on Movant's arguments and authority, as well as additional authority considered and cited by the undersigned, the Court finds good cause to grant the "Motion For Protective Order."

## CONCLUSION

**IT IS, THEREFORE, ORDERED** that the "Motion For Protective Order" (Document No. 95) is **GRANTED**. The Court's existing "Order" (Document No. 55) granting "Defendant Ally Financial Inc.'s Motion For Protective Order" (Document No. 44) and addressing the conduct of depositions in this case, is amended as follows: No party shall publish or disseminate audio or video recordings obtained during discovery in this action without prior permission of the Court.

**IT IS FURTHER ORDERED** that Plaintiff shall immediately have any video or audio recordings related to this action removed from YouTube and any other internet site. Such video(s) or audio recording(s) may only be used in connection with this lawsuit, unless otherwise ordered by this Court.

**IT IS FURTHER ORDERED** that Plaintiff shall file a Notice with this Court, on or before **December 16, 2014**, describing the steps she has taken to remove video(s) and/or audio recording(s) from public access, <u>and</u> confirming that the 30(b)(6) deposition by Amy Bouque has been removed from YouTube. Failure to abide by this Order will likely lead to sanctions.

**SO ORDERED**.

Signed: December 2, 2014

David C. Keesler
United States Magistrate Judge