UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:10-cv-00311-MOC-DCK

| | | |
|---|---|---|
| **VENUS SPRINGS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **ALLY FINANCIAL, INC. f/k/a GMAC INC.,** | ) | |
| **AMY BOUQUE, KATHLEEN PATTERSON,** | ) | |
| **YEQUIANG HE, and CYNTHIA DAUTRICH ,** | ) | |
| | ) | |
| Defendants. | ) | |

**THIS MATTER** is before the court on Plaintiff's Objections to the Magistrate Judge's

Order of December 2, 2014 (#106) and Defendants' Motion for Sanctions (#107). Having

considered the motions and reviewed the pleadings, the court upholds the magistrate judge's

determination in its entirety and enters the following order.

I.   **INTRODUCTION**

**A. Procedural History**

On June 8, 2010, Plaintiff filed a complaint in the Superior Court of Mecklenburg

County, North Carolina, naming Ally Financial Inc. ("Ally" or "Defendant"), Amy Bouque

("Bouque"), Kathleen Patterson ("Patterson"), and Yequiang (Bill) He ("He") as defendants.

(Document No. 1-1 at 4). The complaint asserted claims arising under Title VII of the Civil

Rights Act, 42 U.S.C. § 2000e, *et seq*. and 42 U.S.C. § 1981, as well as a state law claim for

wrongful termination. (Document No. 1-1 at 15-19). On July 8, 2010, Plaintiff filed an amended

complaint, the crux of which alleged wrongful termination by Defendant Ally. (Document No. 8-

1 at 7-8). According to the amended complaint, Plaintiff began her employment with GMAC,

Inc. in Charlotte, North Carolina during October 2008, as a senior strategic sourcing manager for

legal services. Id. at 7. Plaintiff was hired by GMAC, Inc. "to support the company's legal

department by locating legal service vendors or law firms to represent Defendant's interests in

assisting the company's legal department in its decisions to purchase legal services." Id. at 9.

Plaintiff contended that she was fired by Defendants because she filed an action against her

previous employer, the law firm Mayer Brown, LLP, alleging "inter alia, race based

discrimination and unfair and deceptive trade practices." Id. at 7-8. Plaintiff asserted that though

Defendant Ally had stated "grounds for termination for failure to disclose a conflict of interest

during the interview process and for misrepresentation during the hiring process," such

statements were "pretext for purposeful discrimination and retaliation for having filed a charge

with the EEOC and a claim of race discrimination against one of Defendant Ally's legal vendors,

Mayer Brown." Id. Defendant Ally removed the action to this court on July 12, 2010.

Upon several motions from both parties, the court entered an Order (Document No. 31)

on November 19, 2010, affirming Magistrate Judge Keesler's "Memorandum and

Recommendation" (Document No. 23). The court denied as moot Plaintiff's motion to remand;

granted Defendant Ally's motion to dismiss Plaintiff's claim for negligent infliction of emotional

distress; granted Defendant Bouque's motion to dismiss; and granted Defendant Dautrich's

motion to dismiss. (Document No. 31). On December 28, 2010, the court also dismissed

Plaintiff's claims against Defendant He and Defendant Patterson. (Document No. 35).

On January 17, 2011, the court issued a "Pretrial Order And Case Management Plan"

(Document No. 37). Consistent with the parties' uncontested proposal, the deadline for the

completion of all discovery was set for July 31, 2011. (Document No. 36 at 1; Document No. 37 at 1-3). Little, if any, activity occurred in this case from January 25, 2011, until on or about July 12, 2011, almost six months later, when Plaintiff served written interrogatories on Defendant. (Document No. 38 at 1). Plaintiff's discovery requests were thus filed less than twenty (20) days before the deadline for the completion of all discovery. Plaintiff did not file a request to extend the discovery deadline prior to, or contemporaneously with, her discovery requests. On July 20, 2011, Plaintiff for the first time sought an extension of the discovery deadline. (Document No. 38). Notably, Plaintiff's request was framed as one to allow Defendant Ally time to respond to Plaintiff's interrogatories, but was not consented to by Ally. Id. Defendant Ally *did* consent to an extension of time to complete already scheduled depositions. Id. Based on the foregoing, Judge Keesler did not find good cause to extend the time for written discovery, and denied that portion of Plaintiff's motion, but, noting the parties' consent, allowed the parties through August 30, 2011, to complete currently scheduled depositions. (Document No. 39).

On or about August 4, 2011, Plaintiff served her "Amended Notice Of Rule 30(b)(6) Deposition" (Document No. 45-3) to be held on August 22, 2011, in Charlotte, North Carolina, to which Defendant Ally objected (Document No. 45-5). Plaintiff included approximately twenty categories of documents she contended should be produced at the proposed 30(b)(6) deposition(s). (Id. at 4-6). Defendant Ally then filed a motion for a protective order (Document No. 44) on August 16, 2011. The court stayed the Rule 30(b)(6) deposition pending a ruling on Defendant's motion for protective order. (Document No. 48).

On September 15, 2011, Judge Keesler granted Defendant's Motion For Protective Order (Document No. 55) as follows: (1) two of Defendant's three representatives were to be deposed

in Detroit, Michigan, and the third in Charlotte, North Carolina; (2) Defendant was directed to "make available to Plaintiff those documents Defendant's 30(b)(6) representatives rely upon for their deposition preparation and testimony"; and (3) all depositions were to be completed by October 14, 2011. (Document No. 55 at 10-11). A videotaped Rule 30(b)(6) deposition took place on October 14, 2011 with Ally's corporate representative Amy Bouque. (Document No. 96 at 2; Document No. 63-7).1 "Plaintiff's Third Amended Notice Of Rule 30(b)(6) Video Deposition" noted that "[t]he deposition will be videotaped . . . and Plaintiff provides notice to Defendant Ally and the other parties to this action that *the deposition may be used at the time of the trial*." (Document No. 63-7 at 40) (emphasis added). The transcript of the 30(b)(6) does not reflect that counsel or the parties made any stipulations regarding custody of the transcript or recording. (Document No. 63-7 at 37-38); see also FED. R. CIV. P. 30(b)(5)(C) and (f)(3).

Defendant Ally Financial moved for summary judgment (Document No. 49) on August 30, 2011, and the issue was fully briefed by October 6, 2011. See (Document Nos. 50, 56, 57, and 59). In opposing the motion, Plaintiff filed the 30(b)(6) deposition transcript of Bouque's testimony, but did not file copies of any videotape. (Document No. 57-8). The court held a motion hearing on January 25, 2012, and subsequently granted Defendant's motion for summary judgment and dismissed the underlying action. (Document No. 82).

The court's Judgment was affirmed in an unpublished *per curiam* opinion by the Fourth Circuit. See (Document Nos. 82, 83 and 88.). Plaintiff's petition to the Fourth Circuit for rehearing and rehearing *en banc* was denied. (Document Nos. 89, 91.) Plaintiff's petition for a writ of certiorari to the United States Supreme Court was also denied. Springs v. Ally Financial Inc., 133 S. Ct. 1496 (2013).

Plaintiff then filed a lawsuit in the Eastern District of Michigan against Ally and the individual Defendants from this action, as well as additional Ally employees, Mayer Brown LLP, and the United States Department of the Treasury, alleging that her termination from Ally was the result of racial discrimination. See Springs v. Mayer Brown, LLP, et al., 2:11-cv-13518-BAF-MJH (E.D. Mich.). The Eastern District of Michigan held that Plaintiff's discrimination claims were barred by collateral estoppel and res judicata; that ruling was unanimously affirmed by the Sixth Circuit. Id. at Document No. 60.

**B. Defendants' Motion for Protective Order**

A year and a half after the Fourth Circuit's ruling, in or about February 2014, Plaintiff posted a video on YouTube titled "Amy Bouque Deposition: Best Ways to Tell if A Witness is Lying." See https://www.youtube.com/channel/UCoyNTq41LanT9igLfA6-Hdg.  The 37-minute video consists entirely of excerpts from Ms. Bouque's 30(b)(6) deposition, overlaid with audio commentary by Plaintiff. In her commentary in the video, Plaintiff repeatedly suggests that Ms. Bouque is lying at the deposition based on Ms. Boque's various hand gestures. For example, when Ms. Bouque touches her ear during her testimony, Plaintiff states: "The monkey hears no evil. She doesn't want to hear her own lies." When Ms. Bouque touches her nose, Plaintiff states: "This is one of the worst signs—the Pinocchio. The deponent's subconscious mind thinks her nose is growing while she's lying and that everyone can see it, so she tries to cover her nose so we cannot see it growing." When Ms. Bouque rests her chin on her hands, Plaintiff states: "This gesture is just called the 'liar liar.' . . . She is using her two hands pressed up against her mouth to try to prevent herself from being insincere."

Around the same time, Plaintiff posted two other videos on YouTube, one entitled "Ally Bank – Agent of the Elite – Doesn't Care About Customers," and the other entitled "Ally Bank – They Don't Represent Your Interests." These videos likewise consist of excerpts from the videotape of Ms. Bouque's Rule 30(b)(6) deposition testimony.[1] Ally and Ms. Bouque state that their counsel sent a letter to Plaintiff on July 2, 2014, demanding she remove the videos, but as of the date of Defendants' response to Plaintiff's objections, the videos were still posted on YouTube. After receiving no response from Plaintiff, Defendants Ally and Bouque filed a motion for a protective order (Document No. 95) on September 24, 2014. Defendants sought either a new protective order or a modification of the existing protective order (Document No. 55). Defendants asked the court to require that the video from the 30(b)(6) deposition of Ally be used only for the purposes of this action, and thus, removed from YouTube. Defendants alleged that the YouTube video defamed Ally and Bouque and that the posted videos abused the discovery process. Plaintiff opposed the motion.

**C. The Magistrate Judge's Order**

On December 2, 2014, Magistrate Judge Keesler entered an order granting Defendants' motion for protective order. (Document No. 104). In that order, Judge Keesler amended the existing protective order to provide that "No party shall publish or disseminate audio or video recordings obtained during discovery in this action without prior permission of the Court." Id. The order further mandated that:

> [1] Plaintiff shall immediately have any video or audio recordings related to this action removed from YouTube and any other internet site. Such video(s) or audio recording(s) may only be used in connection with this lawsuit, unless otherwise ordered by this Court; [and]

---

[1] Defendants state that the titles of two of Plaintiff's videos have been changed since Plaintiff initially uploaded them, but that the content remains the same.

> [2] Plaintiff shall file a Notice with this Court, on or before December 16, 2014, describing the steps she has taken to remove video(s) and/or audio recording(s) from public access, and confirming that the 30(b)(6) deposition by Amy Bouque has been removed from YouTube.

Id. Judge Keesler further notified Plaintiff that "[f]ailure to abide by this Order will likely lead to sanctions." Id.

Apparently not dissuaded by the court's order, Plaintiff filed a notice with the court on December 16, 2014 unequivocally stating that she would only remove the video and audio recorded from the deposition "when so ordered by an Article III judge." (Document No. 105 at 1). The next day, Plaintiff filed objections to the order (Document No. 106). Defendants have responded to the objections (Document No. 110) and the matter is now ripe for review.

### D. Plaintiff's Objections

Plaintiff raises several objections to Judge Keesler's order. First, Plaintiff argues that the court has no subject matter jurisdiction over Defendants' motion for a protective order because the claims forming the basis of the case have been adjudicated and dismissed, and that consequently, no valid case or controversy exists. Plaintiff also argues that Defendants' motion was untimely, that no just cause existed for the issuance of a protective order, and that Judge Keesler's December 2, 2014 order is an unconstitutional prior restraint on Plaintiff's First Amendment right to free speech. The court will address each of Plaintiff's objections in turn.

## II.  APPROPRIATE STANDARD OF REVIEW

Generally, a district court may designate a magistrate judge to hear and decide any "pretrial matter not dispositive of a party's claim or defense." FED. R. CIV. P. 72(a); see also 28 U.S.C. § 636(b)(1)(A). After a timely objection by either party, the standard of review for a district court

reviewing a magistrate judge's determination of non-dispositive pretrial matters is "clearly

erroneous or contrary to law." 28 U.S.C. § 636(b); FED. R. CIV. P. 72(a). A factual finding is

clearly erroneous when the court is "left with the definite and firm conviction that a mistake has

been committed." TFWS, Inc. v. Franchot, 572 F.3d 186, 196 (4th Cir. 2009) (quoting Anderson

v. Bessemer City, 470 U.S. 564, 573 (1985)). To show that a magistrate judge's order is contrary

to law, the objecting party must show that the magistrate judge failed to apply or misapplied

statutes, case law, or procedural rules.  See Catskill Dev. LLC v. Park Place Entm't Corp., 206

F.R.D. 78, 86 (S.D.N.Y. 2002). "Although the 'contrary to law' standard permits plenary review

of legal conclusions, decisions related to discovery disputes … are accorded greater deference."

Stonecrest Partners, LLC v. Bank of Hampton Roads, 770 F. Supp. 2d 778, 782 (E.D.N.C. 2011)

(internal citation omitted). Orders resolving pretrial discovery issues are generally considered

non-dispositive. See Fed. Election Comm'n v. Christian Coal., 178 F.R.D. 456, 459 (E.D. Va.

1998) ("Courts have consistently found discovery motions to be non-dispositive within the

meaning of [Rule 72(a)].") (citing Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525

(2d Cir. 1990), cert. denied, 498 U.S. 846 (1990) and Merritt v. Int'l Brotherhood of

Boilermakers, 649 F.2d 1013, 1018 (5th Cir. 1981)).

Plaintiff asks the court to apply a less deferential, *de novo* standard in reviewing Judge

Keesler's December 2, 2014 order. See 28 U.S.C. § 636(b)(1)(B-C); FED. R. CIV. P. 72(b) (for

dispositive pretrial motions, a magistrate judge has authority to submit proposed findings of fact

and recommendations for disposition of the matter, which the district court reviews *de novo*).

Plaintiff contends that Defendants' motion for a protective order was not a "pretrial matter"

because the case had already been closed when Judge Keesler entered his order. However, courts

have routinely held that post-judgment motions on matters separate from the merits of a case may properly be referred to magistrate judges. See, e.g. (Merritt v. Int'l Bhd. of Boilermakers, 649 F.2d 1013, 1016-18 (5th Cir. 1981)); United States v. Flaherty, 668 F.2d 566, 586 (1st Cir. 1981) holding modified by United States v. Piper, 35 F.3d 611 (1st Cir. 1994); Robinson v. Eng, 148 F.R.D. 635, 641 (D. Neb. 1993). Moreover, the term "pretrial" is not literally construed to mean "before a trial," but instead, has been consistently interpreted to "refer generally to matters unconnected to the issues litigated at trial." Robinson v. Eng, 148 F.R.D. 635, 641 (D. Neb. 1993). Here, Defendants' motion for a protective order was separate from the merits of the litigation, and was thus properly referred to the magistrate judge. Because the court finds that Judge Keesler properly decided a non-dispositive, pretrial matter, it will review his order for clear error.

### III. RULES GOVERNING DISCOVERY AND PROTECTIVE ORDERS

Rule 26(b) of the Federal Rules of Civil Procedure provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

FED. R. CIV. P. 26(b). The rules of discovery are to be accorded broad and liberal construction. See Herbert v. Lando, 441 U.S. 153, 177 (1979); Hickman v. Taylor, 329 U.S. 495, 507 (1947). Rule 26(c) provides that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending--or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken." FED. R. CIV. P.

26(c)(1). A "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Id. The court has "substantial latitude to fashion protective orders." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984).

## IV. DISCUSSION OF PLAINTIFF'S OBJECTIONS

### A. Subject Matter Jurisdiction

Plaintiff argues that because the underlying claims of this case have been adjudicated and dismissed, no Article III "case" or "controversy" exists, and that consequently, the court does not have subject matter jurisdiction over Defendants' motion. (See U.S. Const. art. III § 2, cl. 1). The court notes, however, that "[i]t is well established that a federal court may consider collateral issues after an action is no longer pending," Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 395 (1990), and that a court may assert ancillary jurisdiction "to manage its proceedings, vindicate its authority, and effectuate its decrees." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 380 (1994). Through ancillary jurisdiction, "a district court acquires jurisdiction of a case or controversy in its entirety, and, as an incident to the full disposition of the matter, may hear collateral proceedings when necessary to allow it to vindicate its role as a tribunal." 13 Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 3523.2 (3d ed.). Although ancillary jurisdiction "[may not] be used as a basis for adjudicating post-dismissal disputes involving the merits of an action if the final order fails to expressly reserve jurisdiction," Colaprico v. Sun Microsystems, Inc., 1994 WL 514029, at *2 (N.D. Cal. Aug. 22, 1994), it may be properly invoked in order for the court to address collateral matters such as costs and attorneys' fees and sanctions. Cooter & Gell, 496 U.S. at 395-96. District courts have asserted

ancillary jurisdiction over post-judgment disputes regarding enforcement of protective orders.

See, e.g., Colaprico, 1994 WL 514029, at *2.

Here, Defendants do not raise any contentions in their motion relevant to the merits of the litigation. Rather, they seek assistance from the court in preventing abuse of discovery materials obtained in this case through the enforcement of the protective order. Such a request is a "collateral matter" that may be properly addressed by the court. Accordingly, the court will overrule Plaintiff's objection regarding subject matter jurisdiction.

### B.  Timeliness of Defendants' Motion

Plaintiff contends that Defendants' motion for a protective order pursuant to Rule 26(c) was untimely and objects to the court imposing or modifying a protective order after production of materials and closure of the case. Notably, though Rule 26 is silent as to any deadline for when a protective order must issue, it is implied that motions for protective orders must be timely. Brittain v. Stroh Brewery Co., 136 F.R.D. 408, 413 (M.D.N.C. 1991). Plaintiff argues that because there was no pending case or any discovery being sought at the time Defendant filed their motion, their motion was untimely. The court finds otherwise. As noted by the magistrate judge,

> A motion for a protective order is timely if made prior to the date set for producing the discovery. In determining timeliness, a court should consider all of the circumstances facing the parties. Thus, a failure to request a protective order prior to the time set for producing the discovery may be excused for good cause, such as lack of sufficient time or opportunity to obtain the order.

Id. (internal citations omitted). The court finds that good cause does exist in this case. As noted by Judge Keesler, Defendants simply could not have foreseen Plaintiff's use of unfiled 30(b)(6) deposition videos on a public internet site during the discovery process. Once they found the

videos and discovered what they perceived to be abuse of discovery, they promptly contacted

Plaintiff and YouTube, and then sought relief from the court when their efforts to have the video

removed were unsuccessful. Given the circumstances, the court finds no error in Judge Keesler's

decision to consider Defendants' motion timely. Plaintiff's objection that Defendants' motion

was untimely is therefore overruled.

### C. Just Cause for Issuing a Protective Order

As noted above, Rule 26(c) allows any person from whom discovery is sought to move for a

protective order. FED. R. CIV. P. 26(c)(1). "The court may, for good cause, issue an order to

protect a party or person from annoyance, embarrassment, oppression, or undue burden or

expense." Id. The court has "substantial latitude to fashion protective orders."

Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984). The Supreme Court has instructed:

> Liberal discovery is provided for the sole purpose of assisting in the preparation
> and trial, or the settlement, of litigated disputes. Because of the liberality of
> pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to
> have the authority to issue protective orders conferred by Rule 26(c). It is clear
> from experience that pretrial discovery by depositions and interrogatories has a
> significant potential for abuse. This abuse is not limited to matters of delay and
> expense; discovery also may seriously implicate privacy interests of litigants and
> third parties.
> …
>
> There is an opportunity, therefore, for litigants to obtain—incidentally or
> purposefully—information that not only is irrelevant but if publicly released could
> be damaging to reputation and privacy. The government clearly has a substantial
> interest in preventing this sort of abuse of its processes.

Seattle Times Co. v. Rhinehart, 467 U.S. 20, 34-35 (1984). Generally speaking, dissemination of

pretrial discovery materials by the receiving party is permitted absent a protective order. DaCosta

v. City of Danbury, 298 F.R.D. 37, 39 (D. Conn. 2014). However, such "dissemination for non-

judicial purposes is unusual and rightly so." Id. In light of the liberality of the discovery process,

Courts…must be mindful that the purpose of discovery is to facilitate orderly preparation for trial, not to educate or titillate the public. Although the details underlying a particular litigation might hold some interest for many members of the public, virtually all [members of the public] have an interest in ensuring that everyone in our society ha[s] access to a fair and impartial judicial system without having to pay too high a price of admission in the form of the surrender of personal privacy. Thus, courts must be vigilant to ensure that their processes are not used improperly for purposes unrelated to their role.

Id. at 39-40 (internal citations and quotations omitted).

As evidenced by his order, Judge Keesler considered all of these legal standards. He also discussed several relevant district court cases dealing with whether to issue protective orders under similar circumstances. See Order (Document No. 104) at 9, 11-12 (citing Larson v. American Family Mutual Insurance Co., 2007 WL 622214 (D. Colo. Feb 23, 2007); Barket v. Clark, 2013 WL 647507 (D. Nev. Feb. 21, 2013); Stern v. Cosby, 529 F.Supp. 2d 417 (Dec. 12, 2007); and Brittain v. Stroh Brewery Co., 136 F.R.D. 408, 413 (M.D.N.C. 1991) (district court cases entering protective orders)).

Plaintiff sets forth several arguments regarding her contention that good cause did not exist for Judge Keesler's entry of the protective order. First, Plaintiff argues that Seattle Times and its progeny are inapplicable to the instant matter, citing differences between the factual circumstances in that case and this one. While this case does indeed present unique facts from those before the Supreme Court in Seattle Times, the facts are not so different as to render the case inapposite. In fact, the court finds its holdings and instructions entirely applicable and relevant to the situation of the parties in this matter. The court finds no error in Judge Keesler's reliance on Seattle Times and on subsequent district court cases in entering the protective order.

Plaintiff also argues that the video deposition is a matter of public concern[2] and that

Defendants have not shown a sufficiently specific injury to justify the court's intervention.

Plaintiff further argues that there is no meaningful difference between the deposition transcript

(which was filed with the court) and the video deposition (which was not filed with the court).

On all points, the court disagrees. Plaintiff has used discovery from this case to publicly mock a

private individual, accuse her of perjury, and portray her in a light that would cause any

reasonable person embarrassment and annoyance. Indeed, Ms. Bogue submitted a sworn

declaration stating that she felt such embarrassment and annoyance. The court finds that

Plaintiff's actions have created a scenario precisely contemplated by the Federal Rules of Civil

Procedure and as such, finds no error in Judge Keesler's determination that good cause exists

here for a protective order. The court will therefore overrule Plaintiff's objection in this regard.

### D. Scope of the Magistrate Judge's Order

Plaintiff objects to the scope of Judge Keesler's order and claims that it is an

unconstitutional prior restraint on free speech. Plaintiff notes that Defendants' motion only

requested a protective order with respect to the 30(b)(6) deposition video, but that Judge

Keesler's order imposed a broader restriction on the use of all audio and video recordings

obtained during discovery, including materials that were filed with the court. Plaintiff contends

the protective order, which provides that "no party shall publish or disseminate audio or video

recordings obtained during discovery in this action without prior permission of the Court,"

(Order (Document No. 104) at 12), violates the First Amendment.

---

[2] Plaintiff argues that the deposition is a matter of public concern relevant to allegations against Ally regarding discriminatory auto lending practices.

The court finds, however, the Judge Keesler's order is entirely consistent with the First

Amendment. Indeed, in Seattle Times, the Supreme Court stated:

> it is important to recognize the extent of the impairment of First Amendment rights that a protective order … may cause. As in all civil litigation, petitioners gained the information they wish to disseminate only by virtue of the trial court's discovery processes.…A litigant has no First Amendment right of access to information made available only for purposes of trying his suit. Thus, continued court control over the discovered information does not raise the same specter of government censorship that such control might suggest in other situations.

Seattle Times Co. v. Rhinehart, 467 U.S. 20, 32 (1984) (internal citations omitted). The Court

held that where "a protective order is entered on a showing of good cause as required by Rule

26(c), is limited to the context of pretrial civil discovery, and does not restrict the dissemination

of the information if gained from other sources, it does not offend the First Amendment." Id. at

37. That is precisely the situation here. The deposition video was taken solely for the purposes of

allowing Plaintiff to obtain evidence relating to her claims. The protective order is limited in

scope to materials obtained by the parties during civil discovery and is justified by good cause,

as explained above. Accordingly, the protective order does not violate the First Amendment and

Plaintiff's objection in this regard is overruled.

**V.   DISCUSSION OF DEFENDANTS' MOTION FOR SANCTIONS**

The court has also considered Defendants' motion for sanctions. Defendants argue that

Plaintiff's deliberate refusal to comply with Judge Keesler's protective order merits sanctions in

the form of a civil contempt order, a fine of $100 per day from the date on which the order was

entered until such time as Plaintiff complies with the order, and payment of Defendants' costs

and attorneys' fees in connection with this motion.

District courts have broad discretion in determining whether to impose sanctions pursuant to Federal Rule of Civil Procedure 37(b). Such discretion, however, is "one to be exercised discreetly and never when it has been established that failure to comply has been due to inability, and not to wilfulness, bad faith, or any fault of (the non-complying party)." Wilson v. Volkswagen of Am., Inc., 561 F.2d 494, 503 (4th Cir. 1977) (internal quotation and footnotes omitted). Clearly and deliberately violating a protective order, as Plaintiff has done here, is an appropriate ground for issuing sanctions. See Smith & Fuller, P.A. v. Cooper Tire & Rubber Co., 685 F.3d 486, 489 (5th Cir. 2012) ("There is …significant authority in support of the imposition of Rule 37(b) sanctions for violation of Rule 26(c) protective orders.); Static Control Components, Inc. v. Darkprint Imaging, 201 F.R.D. 431, 436 (M.D.N.C. 2001). Before entering sanctions, however, the court must consider: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." Belk v. Charlotte-Mecklenburg Bd. of Educ., 269 F.3d 305, 348 (4th Cir. 2001).

Here, though the court certainly does not condone Plaintiff's pointed refusal to comply with the magistrate judge's order, it does not find that Plaintiff's failure to comply with the order was done in entirely bad faith. Plaintiff raised legitimate concerns and arguments about the court's jurisdiction and findings related to the protective order. Though the court is ultimately unpersuaded by Plaintiff's arguments, it finds that Plaintiff put forth a good faith effort in arguing her position.

The court also notes, however, that a lack of bad faith does not preclude an imposition of sanctions. In fact, even an unintentional violation of a protective order is an appropriate ground for sanctions. <u>Forrest Creek Associates, Ltd. v. McLean Sav. & Loan Ass'n</u>, 831 F.2d 1238, 1245 (4th Cir. 1987). Nonetheless, the court has weighed the other factors and still finds that sanctions are not merited in this case. As such, the court declines to issue any sanctions at this time. Plaintiff is cautioned, however, that this decision in no way gives her license to continue disobeying court orders. To the contrary, the court takes note of Plaintiff's intentional violation of the magistrate judge's order and will not hesitate to consider further motions for sanctions if it finds that Plaintiff has continued to ignore the orders of this court. The court will thus deny Defendants' motion for sanctions without prejudice.

## VI. CONCLUSIONS

In light of the above analysis, the court finds that the decision of the magistrate judge is neither clearly erroneous nor contrary to law. The court overrules each of Plaintiff's objections, fully adopts the order of the magistrate judge as his own, and affirms the decision in its entirety. Though the court will not issue sanctions against Plaintiff at this time, Plaintiff is advised that the court is prepared to do so in the future if it learns that Plaintiff has failed to comply with this order.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Plaintiff's Objections to the Magistrate Judge's December 2, 2014 Order (#106) are **OVERRULED**. The Court **AFFIRMS** the Magistrate Judge's Order (#104) in its entirety and **ORDERS** Plaintiff to comply with the all aspects of the

Magistrate Judge's decision. **IT IS FURTHER ORDERED** that Defendants' Motion for

Sanctions (#107) is **DENIED** without prejudice.

Signed: February 6, 2015

Max O. Cogburn Jr.
United States District Judge